## Commonwealth *vs.* Pedro Alvarez.

No. 05-P-1374.

Suffolk. October 19, 2006. - June 27, 2007.

Present: McHugh, Cohen, & Katzmann, JJ.

*Practice, Criminal,* Appeal, Assistance of counsel. *Rules of Appellate Procedure. Appeals Court,* Appeal from order of single justice.

Discussion of the general analytical framework governing a criminal defendant's claim that he entirely lost his right of direct appeal as a result of acts or omissions of counsel after the appeal had entered in an appellate court. [440-443]

This court vacated an order of a single justice denying a criminal defendant's motion to reinstate his direct appeal, which had been dismissed on the defendant's motion under Mass.R.A.P. 29(b), where appellate counsel's actions, including his failure to submit more than a conclusory affidavit alleging that no colorable claims were present, amounted to a constructive denial of the defendant's right to counsel [443-446]; further, the fact that the defendant also submitted an affidavit indicating that he assented to the dismissal of the appeal did not change the result, where the record was insufficient for this court to determine whether the single justice had examined the issue of the voluntariness of the defendant's assent, and where the record contained objective evidence of irregularities in counsel's performance [446-447]; therefore, this court remanded the case to the single justice for the appointment of screening counsel to review both the circumstances surrounding the dismissal of the defendant's appeal and the trial record [447-448].

Indictment found and returned in the Superior Court Department on January 7, 2002.

The case was tried before *Bertha D. Josephson,* J.

A motion to reinstate a direct appeal was heard by *Graham,* J., in the Appeals Court.

*Pedro Alvarez,* pro se.

*Annette C. Benedetto,* Assistant Attorney General, for the Commonwealth.

Cohen, J. The defendant, who appears pro se, appeals from

an order of a single justice of this court denying the defendant's motion to reinstate his direct appeal, which had been dismissed on the defendant's motion under Mass.R.A.P. 29(b), as amended, 378 Mass. 943 (1979). We vacate the order and remand this matter to the single justice for the appointment of screening counsel to determine whether and in what forum further efforts should be made to restore the defendant's appellate rights.

1. *Background.* On December 11, 2002, after a jury trial, the defendant was convicted of trafficking in cocaine in violation of G. L. c. 94C, § 32E(*b*)(4). He filed a timely notice of appeal and, thereafter, was assigned court-appointed appellate counsel. The appeal was docketed in this court on March 18, 2003. On April 22, 2003, counsel filed a motion for an enlargement of time in which to file the defendant's brief, which was allowed to July 1, 2003, with the notation "no further enlargements." Counsel failed to file the brief as scheduled. Instead, he filed an additional motion for enlargement of time on July 2, 2003, the day after the brief was due. That motion was denied.

According to the affidavit filed by the defendant in support of his motion to reinstate, counsel did not disclose to the defendant that he had failed to file a brief within the time allowed. Rather, as shown by a handwritten letter sent to the defendant at the Old Colony Correctional Center on July 8, 2003, counsel advised the defendant that the appeal should be discontinued. Counsel wrote: "This is to confirm our conversation regarding your direct appeal. I am recommending that you voluntarily dismiss the direct appeal, as I have examined the transcripts of trial and can find no substantial error or issue to raise. I also will file a motion for a new trial for you to raise the ineffective assistance of counsel issues relative to a failure to file a motion to suppress and other shortcomings at trial."

On July 10, 2003, counsel filed a motion to dismiss the appeal, accompanied by his own affidavit and that of the defendant. Counsel's affidavit stated that he had "made a thorough review of the transcript of the defendant's trial and the law applicable thereto," "fully discussed this case and the grounds for appeal with the defendant," and "informed the defendant of the consequences of dismissing his appeal." It stated further that the defendant, "after consultation and review with [counsel], has

elected to dismiss his appeal." The defendant's affidavit stated that he "wish[ed] to dismiss this appeal," and that "withdrawal [was] made voluntarily and without threats or other inducements with respect to this decision." The motion was allowed, and the appeal was dismissed "with prejudice." Counsel never filed a motion for new trial as promised in his letter to the defendant.

On August 24, 2005, the defendant, acting pro se, moved to reinstate the appeal. In a supporting affidavit, the defendant averred that he "unwittingly waived [his] right to [a]ppeal . . . due to the mis[]information of [a]ppellate counsel"; that counsel never disclosed that he had failed to file the brief within the time allotted; that the defendant made numerous unsuccessful attempts to contact counsel before finally receiving the contents of the record; and that the defendant only recently learned that counsel had never filed a motion for new trial as promised. In support of his motion, the defendant also included a few short excerpts from the trial transcript where his trial counsel had made objections, and alluded to trial counsel's failure to file a pretrial motion to suppress evidence, but he did not argue the merits of any of these potential issues or provide any factual context in which they could be evaluated.

2. *Discussion.* Unquestionably, it is a highly significant feature of this case that the defendant participated in the dismissal of his appeal. However, before considering the impact of that fact, we begin by setting out the general analytical framework governing a defendant's claim that he entirely lost his right of direct appeal as a result of acts or omissions of counsel after the appeal had entered in an appellate court.

The Commonwealth would have us consider the issue under the two-prong *Saferian* test generally applicable to allegations of ineffective assistance of counsel, *Commonwealth* v. *Saferian*, 366 Mass. 89 (1974), i.e., whether counsel's performance fell "measurably below that which might be expected of an ordinary fallible lawyer," and whether such deficiency "likely deprived the defendant of an otherwise available, substantial ground of defence." *Id.* at 96. Thus, under the Commonwealth's analysis, the defendant in this case would be precluded from obtaining relief if only because he has not fulfilled the second prong of the

*Saferian* test by showing that he was deprived of the opportunity to present potentially meritorious appellate issues.

There is, however, a recognized distinction between the typical case of ineffective assistance of counsel governed by *Saferian* and a case where counsel's shortcomings during the appellate process have altogether deprived a defendant of review on direct appeal. As articulated in *Commonwealth* v. *Frank*, 425 Mass. 182, 184 (1997), in the latter situation, the defendant is not required to specify or argue the appellate issues that he would raise were his appeal reinstated.

In *Frank*, without the defendant's consent, counsel failed to file an appellate brief, resulting in the dismissal of the defendant's direct appeal. Emphasizing that a defendant has a clear statutory right to a direct appeal and a constitutional right to counsel in prosecuting that appeal, *ibid.*, the court applied Federal constitutional standards applicable not only in cases where the defendant had no counsel at all on appeal, but also in cases where counsel's failures essentially waived the defendant's opportunity to make his appellate case on the merits.

As *Frank* explained, the court was presented with the "very variant of the right to counsel [on] appeal" that had been addressed by the United States Supreme Court in *Evitts* v. *Lucey*, 469 U.S. 387 (1985), where the Supreme Court fully restored appellate rights lost to a criminal defendant as a result of counsel's failure to meet various procedural requirements. Accordingly, the case was not to be analyzed under the usual standards relating to ineffective assistance of counsel, but as one where the defendant essentially was deprived of appellate representation altogether. *Commonwealth* v. *Frank, supra* at 184. As the *Frank* court stated: "Whatever the standards for effective assistance of counsel on appeal, '[i]n a situation like that here, counsel's failure was particularly egregious in that it essentially waived respondent's opportunity to make a case on the merits; in this sense, it is difficult to distinguish respondent's situation from that of someone who had no counsel at all.' " *Ibid.*, quoting from *Evitts* v. *Lucey, supra* at 394 n.6.

*Frank* went on to address the question of relief, determining that the case should be remanded for the appointment of a new attorney, who would be permitted to press the defendant's claims

by prosecuting the appeal, by filing a motion for a new trial, or both.[1] *Commonwealth* v. *Frank, supra* at 185. In other words, as in *Evitts*, the court fully restored the defendant's appellate rights, and did so without consideration of the strength or weakness of his underlying appellate arguments.

More recently, this court had occasion, in *Commonwealth* v. *Kegler*, 65 Mass. App. Ct. 907, 908 (2006), to apply *Frank* in the context of an appeal from the denial by a single justice of this court of a defendant's motion to reinstate a direct appeal, where the defendant's appellate rights were lost because of counsel's neglect.[2] We concluded that counsel's complete failure to press the defendant's direct appeal, resulting in its dismissal, "effectively deprive[d] the defendant of his right of direct appeal." *Commonwealth* v. *Kegler, supra* at 908. By way of remedy, we examined the merits of the defendant's appellate issues, concluding that "the issues raised would not warrant reversal of the defendant's convictions." *Ibid.* Significantly, in *Kegler*, the defendant was represented, and the underlying appellate claims were fully briefed. Thus, we were in a position to review the defendant's appellate issues in a single proceeding, along with the defendant's appeal from the single justice's order denying reinstatement, as if the underlying issues were before us on direct appeal.

We clarify, however, that in other circumstances, the ap-

[1]By leaving the choice of forum and procedural mechanism to counsel, the relief ordered in *Frank* expanded upon the principles set out in *Commonwealth* v. *Cowie*, 404 Mass. 119, 122-123 (1989), which held that a motion for new trial, pursuant to Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001), may, in certain circumstances, provide an adequate alternative remedy to reinstatement of a direct appeal where a defendant contends that he lost his appellate rights as a result of counsel's neglect. We recently had occasion to comment upon *Cowie* in *Commonwealth* v. *Trussell*, 68 Mass. App. Ct. 452 (2007), in which we affirmed the allowance by a single justice of this court of the defendant's motion to file a late notice of appeal. As we explained in *Trussell*, proceeding by way of a motion for a new trial can be a circuitous method of restoring appellate rights; reinstatement of a direct appeal normally has the advantage of fostering judicial economy. *Id.* at 458-459.

[2]In *Kegler*, despite four previous enlargements of time for filing the defendant's brief, and an order of conditional reinstatement, counsel failed to file a brief on time or even to apprise the court of his reasons for failing to do so. *Commonwealth* v. *Kegler, supra* at 907.

propriate disposition would be to permit the defendant to pursue postconviction proceedings as ordered in *Frank, supra* at 185.[3] We further clarify that nothing in *Kegler* should be taken as detracting from the holding in *Frank*, that due process requires that a defendant who actually or constructively has been denied his right to counsel on appeal must be placed in the same position that he would have occupied were he presenting his direct appellate claims in the ordinary course. *Commonwealth* v. *Frank, supra* at 185. He is not to be subjected to a stricter standard of review; nor is he required to establish any colorable appellate issue as a prerequisite to recovering his lost appellate rights.[4] *Ibid.*

We turn now to the present case, considering whether it falls within the parameters of *Frank* — again leaving for later discussion the significance of the defendant's facial acquiescence in the dismissal of his appeal. We conclude that, the defendant's acquiescence aside, this is one of those exceptional cases in which the defendant effectively was denied his right to counsel on appeal.

---

[3]We reached a similar conclusion in *Commonwealth* v. *Trussell, supra*, in which we discussed the standards applicable to motions for enlargement of time to file a notice of appeal in criminal cases. In *Trussell*, we acknowledged the due process requirements underlying *Frank* and *Evitts*, stating that "[i]n criminal cases . . . the Federal Constitution, as the *Evitts* case reveals, acts as a brake on [the principles of] finality" on which Mass.R.A.P. 4(c), as amended, 378 Mass. 928 (1979), and 14(b), as amended, 378 Mass. 939 (1979), rest. *Commonwealth* v. *Trussell, supra* at 457. We therefore concluded that these rules were to be given a construction in criminal cases different from that given in civil cases, and we affirmed the reinstatement of the defendant's appeal in circumstances where the failure to file a notice of appeal within the time limits prescribed by our rules was the result of acts or omissions of counsel to which the defendant did not assent.

[4]We recognize that, subsequent to *Frank*, the United States Supreme Court decided *Roe* v. *Flores-Ortega*, 528 U.S. 470 (2000), holding, in the specific, unusual context of defense counsel's failure to file a notice of appeal following the defendant's guilty plea, that the defendant would not be entitled to relief without demonstrating "prejudice." However, the Court used that term in a limited sense, requiring the defendant to show only that counsel's deficient performance actually caused the forfeiture of the defendant's appeal, i.e., that but for counsel's deficient failure to consult with him about his wishes, he would have timely appealed. *Id.* at 484-485. At the same time, the Court reaffirmed that the defendant need not specify the points he would raise were his right to appeal reinstated, much less show that they would have merit. *Id.* at 485-486.

Here, the defendant's appellate attorney never filed a brief, missing both the original deadline established by Mass.R.A.P. 19(a), as amended, 430 Mass. 1606 (1999), as well as the extended deadline set out in his first motion for enlargement time. His second motion to enlarge the time for filing, filed after the second deadline had been missed, was denied. The defendant's appeal, at that point, was subject to dismissal under the procedures set forth in our Standing Order 17A. Faced with the potential for compulsory dismissal attributable to his own neglect, counsel shortly thereafter filed a motion to dismiss the appeal, pursuant to Mass.R.A.P. 29(b), accompanied by his affidavit indicating that he made a "thorough review" of the case, and that there were no colorable appellate issues.

In major respects, the present case is like *Penson* v. *Ohio*, 488 U.S. 75 (1988). In *Penson*, counsel filed a motion to withdraw in which he also stated that his client had no potentially meritorious appellate issues. Specifically, defense counsel in *Penson* averred that "he ha[d] carefully reviewed the . . . record on appeal" and "found no errors requiring reversal." *Id.* at 78. On that basis, defense counsel was permitted to withdraw, and the defendant's appeal was considered by the Ohio Court of Appeals "without the assistance of any advocacy for the [defendant]." *Id.* at 78-79.

Relying on *Anders* v. *California*, 386 U.S. 738 (1967), the Supreme Court in *Penson* held that defense counsel's actions amounted to a constructive denial of the right to counsel. *Penson* v. *Ohio*, *supra* at 80 ("a criminal appellant may not be denied representation on appeal based on appointed counsel's bare assertion that he or she is of the opinion that there is no merit to the appeal"). While the Court acknowledged that, in some circumstances, it may be appropriate for counsel to withdraw for want of legitimate appellate claims, *Anders* sets out clear procedural safeguards that must be observed in such situations to protect a defendant's due process rights. *Penson* v. *Ohio*, *supra* at 80. In particular, *Anders* requires appellate counsel to submit a brief "referring to anything in the record that might arguably support [an] appeal." *Penson* v. *Ohio*, *supra* at 80, quoting from *Anders* v. *California*, *supra* at 744. The

Court in *Penson* concluded that defense counsel's conclusory submission was insufficient to meet these requirements.[5] *Penson* v. *Ohio, supra* at 81.

In the present case — again deferring consideration of the complexity created by the defendant's participation in the dismissal — we likewise conclude that defense counsel's affidavit was insufficient to discharge his constitutional obligations. Had appellate counsel wished to extinguish the defendant's right of direct appeal on the sole basis that no colorable claims were present, he was obligated to do so through the medium of a brief that meets the requirements articulated in *Anders* and its Massachusetts analogue, *Commonwealth* v. *Moffett*, 383 Mass. 201, 208 (1981) (adopting *Anders* principles as a matter of State constitutional law).[6]

As *Penson* explained, not only does such a brief

> "assist the court in determining that counsel has carefully reviewed the record for arguable claims, but, in marginal cases, it also provides an independent inducement to counsel to perform a diligent review: The danger that a busy or inexperienced lawyer might opt in favor of a one sentence letter instead of an effective brief in an individual marginal case is real, notwithstanding the dedication that typifies the profession. If, however, counsel's ultimate evaluation of the case must be supported by a written opinion referring to anything in the record that might arguably support the appeal, the temptation to discharge an obligation in summary fashion is avoided, and the reviewing court is provided with meaningful assistance. In addition, simply putting pen to paper can often shed new

---

[5]To remedy the constitutional violation, the United States Supreme Court reversed the decision of the Ohio Court of Appeals and remanded the case to that court, where counsel was to be appointed for the defendant to represent him in his appeal. *Penson* v. *Ohio, supra* at 89.

[6]The United States Supreme Court has now clarified that the States may endeavor to craft constitutionally acceptable alternatives to the *Anders* procedure. *Smith* v. *Robbins*, 528 U.S. 259, 276 (2000). However, the Court has not abandoned the core principles of *Penson*: (1) a conclusory statement that there are no colorable appellate issues is not a constitutionally adequate basis for terminating a defendant's rights on direct appeal, *Smith* v. *Robbins, supra* at 280-281; and (2) the actual or constructive denial of counsel on appeal must be remedied without a showing of prejudice. *Id.* at 286.

light on what may at first appear to be an open-and-shut issue." (Citations and quotations omitted.) *Penson* v. *Ohio, supra* at 81 n.4.[7]

There is, however, the additional important factor present here, and not present in *Penson,* to which we finally turn: the defendant also submitted an affidavit indicating that he assented to the dismissal of his appeal, and that "withdrawal [was] made voluntarily and without threats or other inducements with respect to this decision." As noted in *Frank,* "[t]here may be cases in which the loss of appellate rights was due to the deliberate and counseled choice of the defendant, and, in those cases, the defendant must abide by that choice." *Commonwealth* v. *Frank, supra* at 185 n.2.

Here, however, the defendant claims in his motion to reinstate that his decision to agree to the dismissal was based on the "mis[]information of [a]ppellate counsel." In essence, the defendant argues that his appellate attorney deceived him about the procedural status of his case and induced him to agree to a dismissal to mask his representative's own procedural missteps — and to insulate counsel from any adverse consequences that might otherwise have resulted from those errors. He also argues in his brief that counsel never informed him of the option of filing a so-called "*Moffett*" brief. See *Commonwealth* v. *Moffett,* 383 Mass. at 207-209. Stated simply, the defendant asserts that he should not be bound by his affidavit in support of voluntary dismissal because it was not made with full knowledge of essential facts.

Without question, if the defendant were induced to agree to dismissal of his appeal based upon misrepresentations or material omissions by counsel, we would deem his consent to be involuntary. See generally *Commonwealth* v. *Goldman,* 395 Mass. 495, 506-507, cert. denied, 474 U.S. 906 (1985) (waiver of rights must be knowing and intelligent to be deemed voluntary). Such

---

[7]In the present case, the concerns identified in *Penson* are substantial, as the timing of the motion to dismiss, coming as it did on the heels of a missed briefing deadline and counsel's inability to secure an additional enlargement of time, calls into question counsel's objectivity in pursuing voluntary dismissal. The Commonwealth has not identified, and we are not aware of, any conceivable strategic justification for seeking a voluntary dismissal of a direct appeal in a case such as this.

involuntary consent, in combination with the facts surrounding the appellate proceedings overall, would lead to the conclusion that the defendant had been functionally without representation on appeal, requiring reinstatement of his appellate rights.

The defendant's motion to reinstate was denied without comment. Thus, we cannot determine from the record before us that the voluntariness issue was examined by the single justice, and that he exercised his discretion to decide that issue adversely to the defendant. Nor can we determine whether the single justice's consideration of the defendant's motion rested upon the principles set forth above and, in particular, the principle that a motion based on a valid claim of involuntariness cannot properly be denied on the ground that the defendant failed to show potentially meritorious issues.[8] In other words, because we are uncertain as to the basis of the single justice's ruling, we are not in a position to conclude that his order can be affirmed as a proper exercise of his discretion.

Moreover, in the very unusual circumstances presented here — where the defendant's claim of involuntariness is supported not only by his own affidavit, but by the procedural history of the case, including the timing and content of counsel's letter recommending dismissal — we think that additional scrutiny is warranted. This is not a case where the defendant has made a bald allegation, unsupported by other facts, that his voluntary dismissal was actually involuntary. In such a case, a single justice undoubtedly would have discretion to credit the defendant's original, facially valid affidavit in support of voluntary dismissal over a later, self-serving affidavit in support of reinstatement. See generally *Commonwealth* v. *Lopez*, 426 Mass. 657, 663 (1998). Here, however, because the record contains objective evidence of irregularities supporting the conclusion that the defendant effectively was deprived of the right to counsel on appeal, further inquiry is required.

We therefore remand the case to the single justice for the ap-

---

[8]It is possible, for example, that the single justice may have denied the motion for reinstatement because of his belief that a motion for a new trial was an adequate and available method for the defendant to establish that he had not voluntarily agreed to dismiss the appeal. However, as we discuss below, *Frank* suggests that the choice of a mechanism for vindicating an involuntary loss of appellate rights lies with the defendant and his counsel.

pointment of screening counsel to review both the circumstances surrounding the dismissal of the defendant's appeal and the trial record, so that the defendant may decide, with the assistance of counsel, whether further attempts should be made to restore his appellate rights.[9] As *Frank* suggests, the choice of forum and procedural mechanism will be for the defendant and his counsel to make. *Commonwealth* v. *Frank,* 425 Mass. at 185. Various options, alone or in combination, could include renewing the defendant's motion to reinstate his direct appeal in this court, with or without additional affidavits or other written submissions on the voluntariness issue[10]; filing a motion under Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001), in the trial court as a vehicle for obtaining an evidentiary hearing on the question of voluntariness; or moving, under rule 30(b), for a new trial as a means to obtain review of trial court errors, if the issues might be better developed by means of a motion for a new trial, rather than on direct appeal. See *Commonwealth* v. *Frank, supra* at 185, citing to *Commonwealth* v. *Cowie,* 404 Mass. 119, 122-123 (1989).

*Conclusion.* The order of the single justice is vacated. The case is remanded to the single justice for further proceedings consistent with this opinion.

*So ordered.*

---

[9]We note in this regard that the pro se defendant made repeated requests in this court that counsel be appointed to represent him in the present appeal. Initially, he was informed that, if he established his indigency, he would be appointed screening counsel. Then, after providing proof of indigency, his request for representation was denied on the ground that he had no right to counsel for an appeal of this nature, by analogy to *Commonwealth* v. *Conceicao,* 388 Mass. 255 (1983) (holding that an indigent defendant does not have an absolute right to appointed counsel in preparing or presenting a motion for a new trial). We infer that this action was taken without awareness of the unusual nature of the issues presented and their relationship to the defendant's right to a direct appeal.

[10]If conflicting affidavits materialize, the judge has discretion to resolve the conflicts in various ways. See, e.g., *Globe Newspaper Co.* v. *Commonwealth,* 407 Mass. 879, 880 & n.3 (1990); *Commonwealth* v. *Blasser,* 2 Mass. App. Ct. 754, 755 n.1 (1975); *Commonwealth* v. *Thurston,* 53 Mass. App. Ct. 548, 551 (2002).