Commonwealth *vs.* Thomas K. Goewey.

Berkshire. May 7, 2008. - October 16, 2008.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Practice, Criminal,* Motion to suppress, Appeal, Assistance of counsel. *Constitutional Law,* Appeal, Assistance of counsel. *Search and Seizure,* Protective frisk.

This court concluded that the criminal defendant was deprived of the effective assistance of counsel in defense of the Commonwealth's interlocutory appeal of an order granting the defendant's motion to suppress evidence, where the defendant's counsel failed to file an appellate brief or present oral argument, and that the correct course would have been to decide the appeal only after hearing from the defendant, or to have granted the defendant's petition for rehearing and for a brief to be filed after new counsel had been appointed. [401-405]

A District Court judge erred in granting the criminal defendant's motion to suppress evidence that a police officer seized from the defendant upon ordering him out of the vehicle in which he was a passenger and pat frisking him, where, in the totality of circumstances, the officer could have reasonably believed that his safety was in danger, in that the defendant presented to him a questionable identification (a possibly false driver's license), appeared nervous, and made movements that appeared to the officer to indicate reaching for something in the area around the defendant, obscuring his hands from the officer's view. [405-408]

Complaints received and sworn to in the Southern Berkshire Division of the District Court Department on March 3, 2004.

A pretrial motion to suppress evidence .was heard by *Fredric D. Rutberg,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Ireland,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

After review by the Appeals Court, 69 Mass. App. Ct. 429 (2007), the Supreme Judicial Court granted leave to obtain further appellate review.

*Joseph A. Pieropan,* Assistant District Attorney, for the Commonwealth.

*Adriana Contartese* (*Dana Alan Curhan* with her) for the defendant.

.   MARSHALL, C.J. In *Commonwealth* v. *Goewey*, 69 Mass. App. Ct. 429 (2007), the Appeals Court reversed an order of a judge in the District Court allowing the defendant's motion to suppress evidence. We granted the defendant's application for further appellate review because we were concerned that the appeal had been decided without a brief or oral argument from the defendant. We hold that the defendant is entitled to a new appeal. Because the underlying suppression matter has now been fully briefed and argued before us by both the defendant and the Commonwealth, we decide the appeal anew. We reverse the order allowing the motion to suppress.

1. *Background.* The defendant, Thomas Goewey, is charged in the District Court with possession of marijuana with the intent to distribute (G. L. c. 94C, § 32C [a]), and not wearing a seat belt while a passenger in an automobile (G. L. c. 90, § 13A). The police found the marijuana concealed on his person during a routine traffic stop. He moved in the District Court to suppress the marijuana, maintaining that he had been illegally ordered out of the vehicle and pat frisked. The judge allowed his motion. The essence of the judge's ruling was that the police did not have a reasonable suspicion in the circumstances to support the patfrisk.

The Commonwealth sought and obtained leave from a single justice of this court to appeal from the suppression order. See Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996). The appeal was docketed in the Appeals Court and briefed by the Commonwealth. The defendant, through his counsel, filed a timely motion to extend the time for filing his brief. The motion requested an extension of thirty-eight days beyond the scheduled due date in which "to finalize and file" the brief. In a supporting affidavit, counsel — the same attorney who had represented the defendant in the District Court — cited the time needed to attend to his other cases and recent medical issues regarding his elderly parent as bases for his request. He further indicated that the appellate prosecutor had assented to his request. The Appeals Court allowed the motion.

No brief was forthcoming from the defendant, nor is there any explanation on the Appeals Court's docket or elsewhere in

the record before us as to the absence of a brief. Approximately three and one-half months after the extended due date for the brief, the court scheduled the case for oral argument.[1] Approximately one month after that, the court heard argument from the Commonwealth's side only,[2] and in due course decided the appeal. *Commonwealth* v. *Goewey, supra.* In a footnote at the conclusion of its opinion, the Appeals Court stated: "The defendant did not file a brief in this case. We have reviewed the entire record before the motion judge and conclude that there is no ground to support the suppression order. The defendant was, therefore, not deprived of any ground of defense at this stage. See *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974)." *Commonwealth* v. *Goewey, supra* at 437 n.7.

Shortly after the case was decided, the Committee for Public Counsel Services sent a letter to the Appeals Court stating that it had appointed new counsel for the defendant. The new attorney quickly filed a notice of appearance, requested additional time in which to file a petition for a rehearing, and also requested a stay of issuance of the rescript to the trial court. Both requests were granted. In the petition for rehearing eventually filed by his new attorney, the defendant argued on the merits why the order granting his motion to suppress should have been affirmed. He also argued that a rehearing was appropriate in the circumstances because the appeal had been decided without a brief or oral argument in his behalf. The Appeals Court summarily denied the petition for rehearing.

At our request, the parties have addressed in their briefs not only the merits of the underlying suppression issue, but also the significance of the Appeals Court's deciding the case without a brief from the defendant.

2. *Appellate proceeding.* We turn first to the question whether

---

[1]The Appeals Court docket indicates that notice of the argument date was sent to the parties. See Mass. R. A. P. 22 (a), 365 Mass. 870 (1974). The defendant does not claim that his counsel did not receive the notice. Despite not having filed a brief for the defendant, the attorney remained his counsel of record. At no time during the appeal did the attorney seek to withdraw his representation of the defendant. See S.J.C. Rule 3:10, § 10 (b), as appearing in 416 Mass. 1306 (1993).

[2]Despite not filing an appellee's brief, the defendant's counsel could have requested permission to be heard at the oral argument. Mass. R. A. P. 19 (c), 365 Mass. 867 (1974).

it was proper to decide the Commonwealth's appeal without a brief having been filed for the defendant.

The defendant was entitled to the assistance of counsel in defense of the Commonwealth's appeal. This meant that he had the right to the *effective* assistance of counsel. The Commonwealth does not dispute this. Instead, the Commonwealth argues that the defense counsel's failure to file an appellate brief was essentially inconsequential on the facts of this case, because a review of the record of the suppression hearing confirms that the appeal would have been decided against the defendant regardless whether his counsel had filed a brief. The Commonwealth maintains that any arguments the defendant could have made in his brief were evident from the suppression hearing record, and that an appellate court can, and the Appeals Court in fact did, simply determine from its own review of the record whether the defendant was prejudiced by the absence of a brief.

We dealt with a somewhat similar situation in *Commonwealth* v. *Frank*, 425 Mass. 182 (1997). In that case a defendant's direct appeal from his criminal convictions was dismissed by the Appeals Court after his counsel had failed to file a brief in his behalf. We said that "[w]hatever the standards for effective assistance of counsel on appeal, '[i]n a situation like that here, counsel's failure was particularly egregious in that it essentially waived [the defendant's] opportunity to make a case on the merits; in this sense, it is difficult to distinguish [the defendant's] situation from that of someone who had no counsel at all.' " *Id.* at 184, quoting *Evitts* v. *Lucey*, 469 U.S. 387, 395 n.6 (1985). We held that the defendant in that case was entitled to have his appellate rights reinstated. We rejected the Commonwealth's contention, similar to its contention in this case, that the defendant was not entitled to relief because the appellate court could see from the trial court record that the claims he would have raised in his appeal would not have prevailed. *Commonwealth* v. *Frank, supra.* See *Commonwealth* v. *Alvarez*, 69 Mass. App. Ct. 438, 440-443 (2007).

One difference between this case and *Commonwealth* v. *Frank, supra*, is that this case does not involve a direct appeal by the defendant; rather, it concerns the defendant's participation as an appellee in the Commonwealth's appeal from an interlocutory order suppressing evidence. See G. L. c. 278, § 28E; Mass.

R. Crim. P. 15 (a) (2). Nevertheless, the same general principles apply. The defendant was absolutely entitled to be heard in the Commonwealth's appeal, and was entitled to receive the effective assistance of counsel toward that end, no less than in any direct appeal he might pursue after a conviction. And, as in *Commonwealth* v. *Frank, supra,* the defendant, because of his counsel's inaction, was effectively deprived of the assistance of counsel altogether. We are persuaded by the analysis in *United States ex rel. Thomas* v. *O'Leary,* 856 F.2d 1011, 1014-1015 (7th Cir. 1988), which applied the rationale of *Evitts* v. *Lucey, supra,* and other United States Supreme Court right-to-counsel decisions to the type of situation we have here — a government appeal from a trial court suppression ruling decided by the appellate court without a brief or argument by counsel for the defendant — and concluded that relief was required without any need for a showing that the defendant was in fact prejudiced by the absence of counsel. See *Fields* v. *Bagley,* 275 F.3d 478, 485 (6th Cir. 2001).[3,4]

The Commonwealth's reliance on *Commonwealth* v. *Kegler,*

---

[3]There is a distinction between, on the one hand, cases where a defendant is represented by counsel who provides substandard assistance and, on the other hand, cases where a defendant is represented by counsel who provides no assistance at all. In the limited class of cases falling into the latter category, it is said that prejudice can be presumed (in the sense that relief can be granted without consideration of the merits of the defendant's underlying claims). See *Roe* v. *Flores-Ortega,* 528 U.S. 470, 481-484 (2000); *Penson* v. *Ohio,* 488 U.S. 75, 88-89 (1988); *United States* v. *Cronic,* 466 U.S. 648, 657-659 (1984). Cf. *Commonwealth* v. *Curtis,* 417 Mass. 619, 635-636 (1994) ("As to any violation of constitutional rights protected by the Constitution of the Commonwealth [such as the right to counsel under art. 12 of the Declaration of Rights], we would reach our own conclusions as to which constitutional violations are per se grounds for reversal of a conviction").

In the present case, for all intents and purposes, the defendant received no assistance from his attorney in the Appeals Court. By not filing a brief or arguing orally in opposition to the Commonwealth's appeal, the attorney abdicated his responsibility as the defendant's advocate and "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing." *United States* v. *Cronic, supra* at 659.

[4]There is no indication in the record that the defendant or his counsel made a deliberate choice to forgo filing an appellee's brief. See *Commonwealth* v. *Frank,* 425 Mass. 182, 185 n.2 (1997). All indications are to the contrary. The Commonwealth concedes in its brief before us that the attorney's "performance fell measurably below the standard of an ordinary, fallible lawyer" and that "his failure to file a brief or argue his position . . . did not serve the [d]efendant's interests."

65 Mass. App. Ct. 907 (2006), is misplaced. There a defendant's direct appeal was dismissed for failure of his counsel to file a brief. After the appeal was dismissed, counsel tendered a brief and the record appendix and moved for the appeal to be reinstated. A single justice of the Appeals Court denied the motion, and the defendant then appealed from the single justice's order. In affirming the single justice's order, the court purported to "examine[] the merits of the issues raised on appeal (as briefed and argued by the parties) to determine whether counsel's failure to file timely an appellate brief deprived the defendant of an available substantial ground of defense." *Id.* at 908. On consideration of the merits, the court concluded "that the issues raised would not warrant reversal of the defendant's convictions." *Id.* The Commonwealth claims that this illustrates that it is proper for an appellate court to decline to reinstate an appeal in these circumstances if it determines that the appeal would have no merit.

The Appeals Court's decision in *Commonwealth* v. *Alvarez, supra* at 443, however, shows that the Commonwealth has misinterpreted the significance of the *Kegler* decision. The court made clear in the *Alvarez* case that nothing in the *Kegler* decision was intended to deviate from our holding in *Commonwealth* v. *Frank, supra.* The court in *Alvarez* clarified that it had examined the substantive merits of the defendant's appellate issues in *Kegler* only because, by that time, the defendant was both represented by counsel and the merits had been fully briefed by both sides. In other words, the court in the *Kegler* case reviewed the merits as if the defendant's direct appeal were before it, in order to provide the defendant with a remedy for his previously dismissed appeal. The court in *Kegler* did not review the merits as part of the calculation whether to reinstate the appeal. The court in *Alvarez,* in turn, recognized that consideration of the merits for that purpose would have been improper. *Commonwealth* v. *Alvarez, supra* at 442. The court expressly stated: "[N]othing in *Kegler* should be taken as detracting from the holding in *Frank,* that due process requires that a defendant who actually or constructively has been denied his right to counsel on appeal must be placed in the same position that he would have occupied were he presenting his direct appellate claims in the ordinary course. . . . He is not . . . required to establish any colorable appellate issue as a

prerequisite to recovering his lost appellate rights" (footnote and citations omitted). *Commonwealth* v. *Alvarez, supra* at 443.

In sum, in this case the hearing and decision of the Commonwealth's interlocutory appeal was devoid of any advocacy on behalf of the defendant. It was not, as it should have been, an adversary process. The Appeals Court's unilateral review of the transcript of the suppression hearing, perhaps influenced by the Commonwealth's presentation but obviously unaided by any advocacy for the defense, was not an adequate substitute for the defendant's right to the effective assistance of counsel. See *Penson* v. *Ohio,* 488 U.S. 75, 83-85 (1988). Nor was it proper for the court to determine unilaterally, again without the benefit of a brief or argument from the defendant, that the defendant was not prejudiced by the absence of counsel. *Id.* at 85-87. The correct course in these circumstances would have been to decide the appeal only after hearing from the defense — or at a minimum, to have granted the defendant's petition for a rehearing and permitted a brief to be filed for the defendant after new counsel was appointed.[5]

3. *Motion to suppress.* The suppression ruling is now before us on further appellate review, and has been fully briefed and argued before us by both sides. We therefore turn to the substantive merits and decide the case anew.

The underlying facts, based on the motion judge's findings and certain uncontroverted testimony from the suppression hearing, are recited in the Appeals Court's opinion. *Commonwealth* v. *Goewey, supra* at 430-431. We summarize them here. On February 27, 2004, at about 5:45 P.M., State Trooper Brendan O'Neill stopped a vehicle bearing no inspection sticker and parked his cruiser fifteen to twenty feet behind it. As he approached the vehicle, he noticed that none of the four occupants was wearing a seat belt, as required by G. L. c. 90, § 13A. In order to issue cita-

---

[5]An appellate court is not without recourse if counsel for a defendant as an appellee fails to file a brief within the allotted time limits. The court might first attempt to verify through counsel, preferably in writing, whether the defendant has deliberately opted to forgo a brief. If the answer is no, and if no brief is forthcoming, the court could then take appropriate corrective measures such as reporting the derelict counsel to the Board of Bar Overseers and requesting that the Committee for Public Counsel Services appoint a new attorney to represent the defendant.

tions for the seat belt violations, O'Neill requested identification from each occupant.[6] The defendant, who was a passenger in the rear seat, produced a long-expired driver's license bearing a photograph that in several significant ways did not resemble him. O'Neill gave the license to Sergeant George Hamilton of the State police, who had arrived on the scene, and asked him to investigate because he thought the license was possibly false. While the police officers were discussing the license near O'Neill's cruiser, the defendant turned several times to look at them.

Hamilton told O'Neill he would question the defendant. In response to Hamilton's questions, the defendant stated that it was his license, and it was expired because he no longer drove. Also at Hamilton's request, the defendant checked to see whether he had any other identification in his wallet, but he produced none. The defendant appeared nervous during this exchange; he stammered when asked why his license was expired, and his hands shook as he leafed through his wallet.

Hamilton returned to O'Neill's cruiser and again saw the defendant looking at him, quickly turning away, and moving his head down. It also appeared that the defendant was reaching into the area around him, where Hamilton could not see his hands. Based on all these circumstances — the questionable identification, the defendant's nervousness, his movements that appeared to Hamilton to indicate reaching for something, in a coat or around his body or down below the seat — Hamilton feared for his safety and decided to have the defendant get out of the vehicle.

When Hamilton returned to the car, the defendant was smoking a cigarette. Hamilton asked the defendant to extinguish the cigarette and step out of the car, and the defendant complied. Hamilton then pat frisked the defendant for weapons. During the patfrisk, the defendant stated that he had marijuana, which was found hidden under his pant leg. Hamilton completed the patfrisk and found no weapons.

The legal question is whether the police officer was justified in ordering the defendant out of the vehicle and frisking him. "When the police are justified in stopping an automobile for a routine traffic violation," as O'Neill indisputably was here,

---

[6]The defendant acknowledges that O'Neill was permitted to ask the passengers for identification.

"they may, for their safety and the safety of the public, order the driver or the passengers to leave the automobile, but only if they have a reasonable belief that their safety, or the safety of others, is in danger." *Commonwealth* v. *Torres*, 433 Mass. 669, 673 (2001), citing *Commonwealth* v. *Gonsalves*, 429 Mass. 658, 662-663 (1999). "[I]t does not take much for a police officer to establish a reasonable basis to justify an exit order . . . based on safety concerns." *Commonwealth* v. *Gonsalves*, *supra* at 664.

The defendant maintains that this lenient standard was not met. We disagree. The circumstances leading up to the exit order, including the defendant's production of an expired identification with a questionable photograph, his nervousness, and what reasonably appeared to be furtive movements (as if to hide or retrieve something), warranted the officer's concern for his safety. The officer had reason to suspect that the defendant may have been attempting to conceal his identity. More importantly, as far as the officer knew, the defendant could well have been hiding or retrieving a weapon. We conclude that, in the totality of circumstances, the officer could have reasonably believed that his safety was in danger.

In reaching his contrary conclusion, the District Court judge discounted the significance of the defendant's production of what appeared to the officer to be a possibly false identification. He also relied heavily on a potentially innocent explanation for what appeared to be furtive movements. First, the judge reasoned that the defendant, as a passenger, was not required to carry a current driver's license or, for that matter, any identification at all. While that is correct, this is not a case where the defendant produced no identification. The defendant produced an identification that reasonably raised the officer's suspicions. The license he produced was not only expired, but also appeared to the officer to belong to someone else. A passenger's being unable to produce some form of identification may not, by itself, be suspicious; but the production of an apparently false identification is. On a related point, we do not see how, as the defendant contends, the officer could have confirmed at the scene that the expired license was in fact the defendant's, merely because some facial features were visible in the photograph. The record contains no evidence that

the officer could have recognized the defendant in the photograph, despite the significant dissimilarities.[7]

Second, the judge reasoned that the officer should have recognized after the fact that the defendant, in making what had appeared to the officer be furtive movements, was merely retrieving and lighting a cigarette. This, the judge found, should have allayed the officer's concerns for his safety. However, the defendant might have retrieved both a cigarette and a weapon. The fact that he was smoking a cigarette on the officer's return to the vehicle did not necessarily render unreasonable the officer's .otherwise legitimate concerns about a weapon.

4. *Conclusion.* The order allowing the motion to suppress is reversed. The matter is remanded to the District Court for further proceedings.

*So ordered.*

---

[7]Sergeant Hamilton testified that a nose, eyes, and chin were visible in the photograph, but he did not testify as to whether these features in the photograph resembled the defendant's features.