NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-760

ADOPTION OF GORDON (and two companion cases[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother appeals from a single justice's denial of her motion for leave to file a late notice of appeal from decrees of the Juvenile Court terminating her parental rights as to each of her three children.[2]  On appeal, the mother's principal claim is that the single justice abused his discretion where she established good cause for the delay, and her appeal presented meritorious issues.  We affirm.

Discussion.  We review a single justice's decision on a motion for leave to file a late notice of appeal for an abuse of

---

[1] Adoption of Katrina and Adoption of Olivia.  The children's names are pseudonyms.

[2] The two eldest children were the subject of one care and protection proceeding that commenced in 2018, while the youngest child was the subject of a care and protection proceeding that commenced in 2020, the year she was born.  After consolidation and a trial held in January 2023, a judge found Katrina's father fit and awarded permanent custody of Katrina to him, and approved the plans of adoption for the other two children.

discretion.  See Adoption of Patty, 489 Mass. 630, 636 n.9

(2022); Adoption of Howard, 24 Mass. App. Ct. 911, 911 (1987).[3]

In child welfare cases such as this one, "the notice of appeal shall be filed within 30 days from the date of the entry of the . . . decree."  Mass. R. A. P. 4 (a) (1), as appearing in 481 Mass. 1606 (2019).  The court may extend the time for filing the notice of appeal upon a showing of excusable neglect, but in no event for more than an additional thirty-day period.  See Mass. R. A. P. 4 (c), as appearing in 481 Mass. 1606 (2019); BJ's Wholesale Club, Inc. v. City Council of Fitchburg, 52 Mass. App. Ct. 585, 587 (2001).

Here, the time to file a notice of appeal expired on February 13, 2023, i.e., thirty days after the judge issued the decrees terminating the mother's parental rights.  The mother

---

[3] The mother erroneously claims that we should review the single justice's order de novo because he denied her petition in a single sentence.  The mother relies on Commonwealth v. Alvarez, 69 Mass. App. Ct. 438, 447 (2007), in which a defendant's motion to reinstate his direct appeal was denied by a single justice without comment such that we could not determine from the record whether the single justice even examined a certain issue.  Here, by contrast, the single justice's order stated that he reviewed "the motion and supporting materials, including the written oppositions filed in the Juvenile Court that were included in the appendix supporting the motion," in denying the mother's motion for leave.  The sole issue on the mother's motion for leave to file a late notice of appeal was whether the mother has shown good cause for her failure to file a timely appeal and a meritorious case, and the single justice's order indicates that he exercised his discretion to decide that she did not.  See Eyster v. Pechenik, 71 Mass. App. Ct. 773, 781-782 (2008).

2

did not file a motion for leave to file a late notice of appeal in the Juvenile Court until May 25, 2023, which was more than three months after the deadline expired.[4]  Thus, even if the mother could establish excusable neglect, the period for filing the notice of appeal would have nonetheless exceeded the maximum extension of time afforded under Mass. R. A. P. 4 (c).  See Eyster v. Pechenik, 71 Mass. App. Ct. 773, 780 (2008) (judge lacked authority to enlarge appeal period beyond sixty days after challenged order docketed in trial court).

However, if a party demonstrates both good cause and a meritorious case, a single justice or appellate court may enlarge the time for filing a notice of appeal up to one year from the date of entry of the order from which an appeal is sought.  See Mass. R. A. P. 14 (b), as appearing in 481 Mass. 1626 (2019); Tisei v. Building Inspector of Marlborough, 3 Mass. App. Ct. 377, 379 (1975).  "The . . . function of [rule 14 (b)] is to care for cases where for extraordinary reasons the party was unable to apply for a [rule 4 (c)] extension within the time allowed in that rule."  Commonwealth v. Smith, 491 Mass. 377, 386 (2023), quoting Commonwealth v. Trussell, 68 Mass. App. Ct. 452, 454-455 (2007).  In civil cases, the rule 14 (b) standard

---

[4] Following the denial of that motion, the mother filed a motion for leave to file a late notice of appeal in the single justice session of this court.

3

of "good cause" does not substantially differ from the rule 4 (c) standard of "excusable neglect."  See id.; Commonwealth v. Salinger, 76 Mass. App. Ct. 776, 780 (2010).

Under either standard, the movant must show that "the mistake, misunderstanding, or neglect was excusable and was not due to [her] own carelessness."  Smith, 491 Mass. at 386, quoting Tai v. Boston, 45 Mass. App. Ct. 220, 223 (1998).  "Excusable neglect requires circumstances that are unique or extraordinary, . . . [and] is [meant] to take care of emergency situations only" (quotations and citation omitted).  BJ's Wholesale Club, Inc., 52 Mass. App. Ct. at 587-588 (2001).  A single justice does not have the discretion "to allow late filing of a notice of appeal simply because the matter is important to the parties, the issues to be raised in the appeal are debatable, or the consequences to the losing party are harsh.  Rather, such discretion must focus on the nature of the acts or failures to act that are offered up as excusable neglect."  Smith, supra, quoting Shaev v. Alvord, 66 Mass. App. Ct. 910, 911-912 (2006).[5]  Good cause does not include "[g]arden-

---

[5] We decline the mother's invitation to consider the additional factors that an appellate court or a single justice may consider in criminal cases to determine whether good cause exists.  See Smith, 491 Mass. at 387.  "[T][ermination] proceedings are not criminal in nature.  As parens patriae, the State does not act to punish misbehaving parents but to protect children . . . Accordingly, the full panoply of constitutional rights afforded

4

variety oversight[s]" or "the usual excuse that the lawyer is too busy" (quotation and citation omitted).  Smith, supra at 387.

Here, the mother provided three reasons for her failure to file a timely notice of appeal.  The first is that she is immunocompromised and became very ill with nausea and abdominal pain on several occasions between January 2023 and May 2023, although she could not specify any such occasion except for the time of trial.  She asserted in an affidavit attached to her motion for leave filed in this court that she had set up an appointment to meet with her trial attorney in early February to sign the notice of appeal but was unable to make that appointment.  She stated, "I do not remember why[,] but it is likely that I was sick."  Given the lack of specificity in her assertions, as well as the implication that there were occasions during this time period in which the mother was not so ill as to prevent her from simply signing a notice of appeal, this fails to constitute good cause.  Compare Lawrence Sav. Bank v. Garabedian, 49 Mass. App. Ct. 157, 161-163 (2000) (single justice did not abuse discretion in denying second request for extension of time to file appellate brief based on asserted good cause of attorney's illness).

---

criminal defendants does not apply in these cases" (quotations and citations omitted).  Adoption of Patty, 489 Mass. at 639.

5

Second, the mother states that she was incarcerated between February 21, 2023, and April 13, 2023, and that she did not have a way to contact her trial attorney while incarcerated. Even if we were to credit her claim that she could not contact her trial attorney while incarcerated,[6] this does not constitute good cause because the time to file a notice of appeal had already expired one week prior to her incarceration, as noted above.

Finally, the mother claims that "[t]echnology-related problems," primarily that her cell phone was "lost or stolen more than once this year," difficulties for her to afford a new cell phone, and lack of understanding how to electronically sign documents requiring that she be given the opportunity to do so on paper, impeded her ability to communicate with her attorney to initiate a timely appeal.[7] Again, this claim lacks enough specificity for us to determine whether these issues so impeded her ability to timely sign the notice of appeal. Even if it did, the claim does not amount to the type of "emergency situation" contemplated by the rules. See BJ's Wholesale Club,

_____

[6] Pursuant to G. L. c. 276, § 33A, persons in custody have the right to use a telephone "for the purpose of allowing the arrested person to communicate with [her] family or friends, or to arrange for release on bail, or to engage the services of an attorney." The mother did not provide any evidence that the house of correction in which she was held denied her this right.

[7] Child welfare cases uniquely require adult appellants to sign the notice of appeal personally. Mass. R. A. P. 3 (c) (2), as appearing in 481 Mass. 1603 (2019).

Inc., 52 Mass. App. Ct. at 588. Even considering all of the mother's claims together, she has not established the requisite good cause.

Nor has the mother established that her case is "meritorious or substantial in the sense of presenting a question of law deserving judicial investigation and discussion" (quotation and citation omitted). Tisei, 3 Mass. App. Ct. at 379. While the mother is not required to present a case that is "sure of success," General Motors Corp., petitioner, 344 Mass. 481, 482 (1962), the alleged violations of the Indian Child Welfare Act, 25 U.S.C. §§ 1901 et seq. (ICWA), and of her visitation rights do not raise meritorious appellate issues.

The mother claims that the Juvenile Court violated the ICWA by failing to (1) inquire or instruct the parties to inform the court whether they know or have reason to know that any of the children qualify as an "Indian child" under 25 U.S.C. § 1903(4); (2) confirm whether any of the children were members or eligible for membership in Indian tribes; and (3) treat the children as Indian children until established otherwise. See Indian Child Welfare Act Proceedings, 81 Fed. Reg. 38,778, 38,804-38,806 (June 14, 2016). See also Adoption of Ursa, 103 Mass. App. Ct. 558, 564-566 (2023). She also claims that the Department of Children and Families (DCF) violated the ICWA by failing to file the requisite ICWA notices with the Juvenile Court.

7

As an initial matter, the mother did not raise a ICWA claim at trial, and claims raised for the first time on appeal are generally waived. See Adoption of Willow, 433 Mass. 636, 651 (2001). Even if we assume without deciding that the ICWA claim was not waived, see Adoption of Ursa, 103 Mass. App. Ct. at 564, the claim lacks merit because the children, as a matter of law, are not Indian, so any ICWA violation is without consequence. On July 15, 2021, DCF sent the requisite ICWA notices to the various tribes that the mother indicated potential affiliations with for all three children. Without exception, each tribe responded that the children are not enrolled and are not eligible for membership in their respective tribes. "A tribal determination of a child's eligibility for tribal membership is conclusive as a matter of law." Id. at 567.[8] Therefore, the single justice did not abuse his discretion in determining that the mother has not raised a meritorious ICWA issue. See id. at 564.

---

[8] In her reply brief, the mother claims that the tribal determinations are inconclusive because some of the responses and notices misspelled two of the children's names. Even if we were inclined to accept this argument, the children's potential tribal affiliation solely stemmed from their maternal side of the family, and the mother's child whose name was consistently spelled correctly was determined to not be an Indian child. Therefore, the mother's argument is unavailing, as it is nonetheless conclusive, by virtue of this child's status, that the other two children are not Indian children.

Finally, the mother claims that DCF's pretrial termination of her visitation rights with her children without judicial approval was improper.  See Adoption of Franklin, 99 Mass. App. Ct. 787, 796 (2021).[9]  "It is well-established that a parent must raise a claim of inadequate services in a timely manner." Adoption of Daisy, 77 Mass. App. Ct. 768, 781 (2010), citing Adoption of Gregory, 434 Mass. 117, 124 (2001).  Here, the mother raised this issue for the first time during closing arguments at trial; thus, the issue is waived as untimely.  See Adoption of Willow, 433 Mass. at 651.

In sum, the mother has neither shown good cause nor a meritorious case.  Therefore, the single justice did not abuse

---

[9] DCF initially only temporarily suspended in-person visitation in January of 2021, due to safety concerns after the mother made threats of violence.  DCF later temporarily suspended all visits because of its inability to consistently contact the mother and because she continued to threaten social workers, as well as one of her daughters and her foster mother.

his discretion in denying her motion for leave to file a late notice of appeal.

Order of single justice dated June 23, 2023, affirmed.

By the Court (Meade, Neyman & Hand, JJ.[10]),

*Assistant Clerk*

Entered: March 15, 2024.

---

[10] The panelists are listed in order of seniority.