Filed 11/21/17

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| PHYLLIS K. MORRIS, as Public Defender for the County of San Bernardino,<br><br>     Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,<br><br>     Respondent;<br><br>THE PEOPLE,<br><br>     Real Party in Interest. | E066330<br><br>(Super.Ct.Nos. CIVDS1610302 & ACRAS1600028)<br><br>OPINION |

ORIGINAL PROCEEDINGS; petition for writ of mandate. Michael A. Knish, Annemarie G. Pace and Carlos M. Cabrera, Judges. Petition denied.

Phyllis K. Morris, Public Defender, Stephan J. Willms, Deputy Public Defender, for Petitioner.

Robert L. Driessen for Respondent.

1

No appearance for Real Party in Interest.

California Rules of Court, rule 8.851(a) (rule 8.851), which applies in the appellate division of a superior court, only authorizes appointment of counsel on appeal for defendants who have been "convicted of a misdemeanor." Consequently, it does not require the appellate division to appoint counsel for a defendant who is acting as the respondent on an appeal by the People from an order suppressing evidence under Penal Code section 1538.5.

In this petition, Phyllis K. Morris, in her capacity as the Public Defender for the County of San Bernardino, argues the United States Constitution obligates respondent, the Superior Court of San Bernardino County, to appoint counsel for all indigent defendants in the appellate division. While we agree that a defendant acting as respondent in the appellate division would likely[1] fare better with an attorney than without one, we stress that showing that something might be procedurally better is not the same as showing that the state is obligated to provide it. (See, e.g., *Ross v. Moffitt* (1974) 417 U.S. 600, 616 (*Ross*) ["[T]he fact that a particular service might be of benefit to an indigent defendant does not mean that the service is constitutionally required."].) Petitioner has failed to show why appointment of counsel for respondents in the appellate

---

[1] Though the absence of counsel is not always fatal to a claim on appeal; we note the litigant in the landmark case who caused the United States Supreme Court to hold that all indigent criminal defendants have the right to appointed counsel, was himself without counsel for the majority of that proceeding. (*Gideon v. Wainwright* (1963) 372 U.S. 335, 338 (*Gideon*).)

division, as much as it might conceivably benefit those respondents, is constitutionally mandated. Consequently, we deny the petition.[2]

FACTUAL AND PROCEDURAL BACKGROUND

Petitioner's office represented Ruth Zapata Lopez, a nonparty to this petition, in a case alleging she committed two misdemeanors by driving while under the influence of alcohol and/or drugs. (Veh. Code, § 23152, subds. (a), (b).) Acting on Lopez's behalf, petitioner's office successfully moved to suppress evidence supporting the People's case. (Pen. Code, § 1538.5.) On March 14, 2016, both counts were dismissed in the interest of justice. The People filed a notice of appeal from the granting of the suppression motion on the same day.

On May 11, 2016, a deputy public defender filed a request with the Appellate Division of the Superior Court of San Bernardino County (appellate division) to appoint counsel for Lopez on appeal. Court clerks informed counsel that Lopez was not eligible for appointment of counsel on appeal. According to the deputy public defender, the

---

[2] The petition was first filed in this court on July 7, 2016. On July 13, 2016, we summarily denied that filing. The California Supreme Court stayed the action to facilitate review of a petition for certiorari and then, on September 14, 2016, granted the petition for review, transferred the matter to this court, and directed us to issue an order to show cause why the relief sought in the petition should not be granted. "The Supreme Court's direction that we issue the alternative writ, after our denial, is an expression on the part of the Supreme Court that we examine the contentions raised by petitioner and write an opinion evaluating those contentions." (*Charlton v. Superior Court* (1979) 93 Cal.App.3d 858, 861.) It is not an expression of an opinion that the petition should be granted. (*Ibid.*; see *Popelka, Allard, McCowan & Jones v. Superior Court* (1980) 107 Cal.App.3d 496, 500; *Krueger v. Superior Court* (1979) 89 Cal.App.3d 934, 939.)

3

reason provided was that Lopez "was the respondent, and the respondent on a misdemeanor appeal is not entitled to appointed counsel." In an e-mail attached to the petition, the same deputy public defender asserts a court clerk told him the appellate division's position was that petitioner's office still represented Lopez.

Petitioner filed an earlier petition (case No. E066181) challenging this policy. On June 28, 2016, we summarily denied that petition "without prejudice to petitioner's ability to petition the appellate division for the relief she seeks." The following day, petitioner filed, in the appellate division, a petition for writ of mandate raising the same issue presented here. The appellate division summarily denied the petition on July 5, 2016. The instant petition to this court followed.

## DISCUSSION

In this court, petitioner primarily asserts that the Sixth and Fourteenth Amendments to the United States Constitution require the appellate division to "appoint counsel for all indigent appellees in all misdemeanor criminal appeals, including [Lopez]." Then, turning instead to California statutory authority, petitioner contends the trial court lacks statutory authority to compel her office, specifically, to represent Lopez as a respondent in the appellate division. (Gov. Code, § 27706, subd. (a).) We disagree with her first assertion and, finding no evidence the second has occurred, decline to weigh in on whether a public defender's office may be compelled to represent a respondent in the appellate division.

4

Before explaining our reasons for drawing these conclusions, we comment on what is and what is not at issue on this petition. The petition purports to challenge "[t]he system in place in San Bernardino County, at least as suggested by Appellate Division staff," as if this "system" derived from a policy created by the appellate division in San Bernardino County. As the return notes, however, the rule the appellate division appears to be enforcing in this case is simply rule 8.851, which we mentioned at the outset. What we consider in this opinion, then, is petitioner's assertion that rule 8.851 is facially invalid.[3] We find that it is not, at least under the authorities petitioner has cited.

Rule 8.851(a)(1) provides that an appellate division "must appoint appellate counsel for a defendant *convicted of a misdemeanor* who" is both: (1) subject to incarceration, a fine of more than $500, or "significant adverse collateral consequences as a result of the conviction"; and (2) indigent (which will be assumed if the defendant was "represented by appointed counsel in the trial court"). (Italics added.) Rule 8.851 further provides that "the appellate division may appoint counsel for any other indigent defendant *convicted of a misdemeanor*." (Rule 8.851(a)(2), italics added.) The parties agree that Lopez does not qualify for appointment of counsel under rule 8.851 because she has not been "convicted of a misdemeanor."

---

[3] Petitioner first made this assertion in the traverse, as the petition neither cited nor mentioned rule 8.851.

As we construe the petition and traverse, petitioner suggests we could order that Lopez receive appointed counsel despite rule 8.851 in one of two ways: we could interpret rule 8.851 to require appointment of counsel for respondents who have not been convicted of a misdemeanor by finding an inadvertent omission by the rulemaking body, or we could find rule 8.851 constitutionally infirm as written and remake the rule to require appointment of counsel for even those respondents in the appellate division who have not been convicted of a misdemeanor. For the reasons to which we now turn, neither position has merit.

A. *We may not interpret rule 8.851 to require appointment of counsel for any criminal defendant who has not been convicted of a misdemeanor*

" 'The usual rules of statutory construction are applicable to the interpretation of the California Rules of Court.' [Citation.] This means our primary object is to determine the drafters' intent. 'The words of the statute are the starting point. "Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . ." ' " (*Kahn v. Lasorda's Dugout, Inc.* (2003) 109 Cal.App.4th 1118, 1122-1123.)

We agree with the return that rule 8.851 "is expressed in plain, simple language." There is therefore no need to look to sources extrinsic to the rule itself to determine that the rule's drafters intended to provide appointed counsel only to misdemeanor defendants who have been convicted of a misdemeanor, and not to those who, like Lopez, have not.

6

At bottom, then, petitioner's request that we look to the history of rule 8.851 fails, because we have no reason to consult these materials to interpret the text of the rule.

Still, even if we could properly consider petitioner's arguments regarding the history and purpose of rule 8.851 on the merits,[4] the inferences we draw from the materials presented are different from the ones petitioner draws. According to petitioner, the proposed rule on which the Judicial Council sought comment originally gave an appellate division discretion to appoint counsel, not just for "any other indigent misdemeanor defendant convicted of a misdemeanor" as under the version of rule 8.851(a)(2) that became operative, but for "any other indigent misdemeanor defendant."

---

[4] Even if we disregard the rule that we do not examine extrinsic sources if the legislation is unambiguous and consider petitioner's contentions regarding the history of rule 8.851, we have to take the traverse at face value and trust that petitioner correctly represents the contents of the February 6, 2008 advisory committee report on which she relies. This is because petitioner has not provided us with the legislative history materials she cites; there is no request for judicial notice, and the 2008 report on which petitioner relies has in no way been made part of the record in this court. (See *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26 [explaining importance of proper motions for judicial notice of legislative history materials].) Also, "It is axiomatic that arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party." (*People v. Tully* (2012) 54 Cal.4th 952, 1075; see, e.g., *People v. Peevy* (1998) 17 Cal.4th 1184, 1206 ["Normally, a contention may not be raised for the first time in a reply brief."].) Here, we find ourselves in the unexpected position of assessing a main premise (i.e. that rule 8.851(a) is unconstitutional) that was not raised until the traverse because the petition did not cite rule 8.851 and, therefore, did not analyze its legislative history, purpose, or intent. Although the return made some arguments regarding these issues, respondent has had no ability to answer petitioner's specific points, which, though potentially important to her position, were not made known until the traverse. However, since we eventually find petitioner's legislative history materials do not help her case, we see no actual prejudice to respondent in our treating those materials as we have.

7

The traverse continues: "If this version of Rule 8.851(a)(2) remained as written, this matter would not be before this court, because this language would have included indigent respondents. But for reasons unexplained, the . . . language noted above did not remain, and Rule 8.851(a)(2) now reads '[o]n application, the Appellate Division may appoint counsel for any other indigent defendant *convicted of a misdemeanor.*' (Italics added.) The addition of this italicized language, *i.e.* '*convicted of a misdemeanor,*' took indigent respondents out of the realm of those entitled to appointed counsel in any Appellate Division proceeding."

As petitioner sees it, the omission of respondents on appeal must have been inadvertent, because California Rules of Court, rule 8.850, states that rules in the chapter containing it and rule 8.851 apply to both preconviction and postconviction appeals. However, the conclusion that an inadvertent omission occurred assumes that appointment of counsel for defendants who have not been convicted of a misdemeanor is somehow required, either because the rulemaking body intended to include such a benefit or because some extrinsic authority requires appointment of counsel even for misdemeanor pretrial respondents. It therefore begs the question. We do not have a record from which we could conclude that the rulemaking body intended to offer appointment of counsel to respondents on appeal such as Lopez, who have not been convicted; what petitioner has shown us is that the rulemaking body considered but rejected an option that would have given counsel to Lopez and others like her. We therefore interpret rule 8.851 to mean

8

exactly what it says, which is that only misdemeanor defendants who have actually been convicted are entitled to appointed counsel in the appellate division.

Moreover, we explain in the next section why we find, at least under the authorities petitioner has cited, that the United States Constitution does not require appointment of counsel for all misdemeanor defendants on appeal. Petitioner gives us no reason to find that the rulemaking body must necessarily have intended to offer more than is constitutionally necessary, and we have already intimated that the law is otherwise, because not all services that are "of benefit" to a litigant must be provided at government expense. (*Ross*, *supra*, 417 U.S. at p. 616.) Petitioner's legislative intent argument fails. There is no indication in the record that the rulemaking body decided to offer appointed counsel only to those criminal defendants in the appellate division who have been convicted of a misdemeanor because of an omission instead of because the body concluded, as we do, that no more is required under the Constitution.

B. *Rule 8.851 does not violate the Sixth or Fourteenth Amendments to the United States Constitution as alleged by the petitioner*

The United States Supreme Court has recognized "the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel." (*Johnson v. Zerbst* (1938) 304 U.S. 458, 462-463.) In that court's view, this is why the Sixth Amendment to the United States

9

Constitution "withholds from federal courts,[5] in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel." (*Johnson v. Zerbst*, at p. 463, fn. omitted.) The rule that has developed under the Sixth Amendment is that "in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him." (*Gideon*, *supra*, 372 U.S. at p. 344.) This is the rule on which the petition chiefly relies for its Sixth Amendment claim.

However, "the Sixth Amendment does not apply to appellate proceedings." (*Martinez v. Court of Appeal* (2000) 528 U.S. 152, 161 (*Martinez*).) Therefore, petitioner's challenge to Rule 8.851 as violating the Sixth Amendment to the United States Constitution fails.

Petitioner cites to both *Gideon*'s statement that the Sixth Amendment requires appointment of counsel whenever a person is "haled into" criminal court (as purportedly happened to Lopez when the People appealed (*Gideon*, *supra*, 372 U.S. at p. 344)), and to *Anders v. California* (1967) 386 U.S. 738, 742, for the same proposition, presumably because *Anders* quoted the above referenced rule from *Gideon* in a case examining the role of counsel on appeal from a conviction. Nonetheless, *Anders* does not support a conclusion that the Sixth Amendment applies on appeal, because *Anders* resolved these

---

[5] The same holds true of state courts, since the Sixth Amendment's right to counsel clause is "made obligatory upon the States by the Fourteenth Amendment." (*Gideon*, *supra*, 372 U.S. at p. 342.)

questions not based on the Sixth Amendment, but instead on "[t]he constitutional requirement of substantial equality and fair process." (*Anders*, at p. 744.) As *Martinez* instructs, the Sixth Amendment is not an applicable source of authority when it comes to appointment of counsel on appeal. (*Martinez*, *supra*, 528 U.S. at p. 161.)

Because the Sixth Amendment does not apply, courts have looked to the Fourteenth Amendment when analyzing claims regarding entitlement to counsel on appeal. (See, e.g., *Ross*, *supra*, 417 U.S. at pp. 608-609.) Even though the Sixth Amendment does not require the right to appeal at all, a state that provides the right to appeal must, to remain consistent with the Fourteenth Amendment guarantees of due process and equal protection, make that right equally available to the rich and the poor. (*Griffin v. Illinois* (1956) 351 U.S. 12 [requiring states to furnish transcripts at no cost to indigent defendants on appeal].) In this context, " 'Due process' emphasizes fairness between the State and the individual dealing with the State, regardless of how other individuals in the same situation may be treated. 'Equal protection,' on the other hand, emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable." (*Ross*, at p. 609.)

We look, then, to see whether the due process and/or equal protection clauses of the Fourteenth Amendment require the appointment of counsel when the People appeal the granting of a Penal Code section 1538.5 motion to the appellate division in a misdemeanor case. In order to evaluate the petition on the merits, as directed by the Supreme Court, we look largely to United States Supreme Court jurisprudence regarding

11

the right to appointed counsel as a freestanding due process right.   We find these authorities quite helpful in explaining why we think the state acted constitutionally when it drew the line for who gets appointed counsel in the appellate division at misdemeanor defendants who have been convicted of a misdemeanor.  (*Lassiter v. Dept. of Social Services* (1981) 452 U.S. 18, 24 (*Lassiter*) ["Applying the Due Process Clause is . . . an uncertain enterprise which must discover what 'fundamental fairness' consists of in a particular situation."].)

We begin by noting that, if petitioner's core premise that the usefulness of counsel is sufficient to create a due process right to counsel, it is difficult to see any case in which appointment of counsel is not required.  And yet that is resoundingly not the law.  Rather, "as a litigant's interest in personal liberty diminishes, so does his right to appointed counsel." (*Lassiter*, *supra*, 452 U.S. at p. 26.)  For example, in *Scott v. Illinois* (1979) 440 U.S. 367 (*Scott*), the court affirmed the misdemeanor theft conviction of a defendant who was subject to imprisonment but only sentenced to a $50 fine even though the defendant had requested and been refused counsel in the trial court.  The court has also rejected an argument that each state "is under a constitutional duty to provide counsel for indigents in all probation or parole revocation cases" in favor of a system allowing the government entities charged with administering probation and parole to decide entitlement to counsel on a case-by-case basis.  (*Gagnon v. Scarpelli* (1973) 411 U.S. 778, 787.)  Similarly, in *Lassiter*, the court held that parents in proceedings to terminate

12

parental rights would only be entitled to appointed counsel on a case-by-case basis. (*Lassiter*, at p. 32.)

Although the Sixth Amendment does not guarantee the right to counsel on appeal from a conviction, cases that construe the rights guaranteed therein are instructive on the issue of what due process under the Fourteenth Amendment requires since "[t]he Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause." (*Strickland v. Washington* (1984) 466 U.S. 668, 684-685; see *United States v. Gonzalez-Lopez* (2006) 548 U.S. 140, 146 [same].) Having independently researched the issue, we emphasize that the United States Supreme Court has repeatedly held that the risk of actual imprisonment marks the line at which counsel must be appointed for purposes of the Sixth Amendment. (See, e.g., *Alabama v. Shelton* (2002) 535 U.S. 654, 662; *Scott*, *supra*, 440 U.S. at pp. 373-374; *Argersinger v. Hamlin* (1972) 407 U.S. 25.) "In sum, the Court's precedents speak with one voice about what 'fundamental fairness' has meant when the Court has considered the right to appointed counsel, and we thus draw from them the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty. It is against this presumption that all the other elements in the due process decision must be measured." (*Lassiter*, *supra*, 452 U.S. at pp. 26-27.)

Since the petition does not mention this presumption, petitioner has not rebutted it. Rather, she argues the appeal forces Lopez to face imprisonment because the People's

13

prosecution of Lopez will resume if the appeal is successful, and Lopez faces imprisonment if convicted. We reject this contention. To begin with, it is inconsistent with *Lassiter*'s command that counsel need only be appointed for a litigant "when, if he loses, he may be deprived of his physical liberty." (*Lassiter*, *supra*, 452 U.S. at pp. 26-27.) While we realize Lopez may be more likely to become imprisoned if the People prevail on appeal, the cases discussed *ante* require more than mere likelihood. In fact, and as we have explained, they require actual imprisonment as a direct consequence of losing the action before the right to appointed counsel must attach. (*Scott*, *supra*, 440 U.S. at pp. 373-374 ["We therefore hold that the Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense."].)

Phrased differently, what the Sixth and Fourteenth Amendments guarantee is not so much counsel, but the right to be free from uncounseled imprisonment. (*Lassiter*, *supra*, 452 U.S. at p. 26 ["the Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense."].) The petition has given us no reason to set the line in a different place for a respondent in the appellate division. If the right Lopez has is the right to be free from uncounseled imprisonment, she faces no diminution of that right on

14

appeal, since she will be represented at trial even if the People prevail in the appellate division.

Again, we take no issue with the idea that Lopez's respondent's brief, and perhaps her chances of an affirmance on appeal, might well be better if she had counsel than if she did not. (See, e.g., *Johnson v. Zerbst*, *supra*, 304 U.S. at p. 463 ["The '. . . right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel.' "].) Where we part ways with petitioner is in what we make of the fact that Lopez would fare better on appeal with counsel. She appears to assume it means she has a federal due process right to counsel. As we have explained, she does not.

The petition in this case does not address the framework of cases cited *ante* and instead cites broad rules from *Griffin* and *Douglas v. California* (1963) 372 U.S. 353 (*Douglas*) without analyzing why they require appointment of counsel in the appellate division in California. In her challenge based upon the Fourteenth Amendment, petitioner relies heavily on *Douglas*. There, the court invalidated "a California rule of criminal procedure which provides that state appellate courts, upon the request of an indigent for counsel, may make 'an independent investigation of the record and determine whether it would be of advantage to the defendant or helpful to the appellate court to have counsel appointed. . . . After such investigation, appellate courts should appoint counsel if in their opinion it would be helpful to the defendant or the court, and should deny the appointment of counsel only if in their judgment such appointment would be of no value to either the defendant or the court.' " (*Id.* at p. 355.) The *Douglas*

15

court opined: "When an indigent is forced to run this gantlet of a preliminary showing of merit, the right to appeal does not comport with fair procedure." (*Id.* at p. 357.)

Petitioner does not explain whether she cites *Douglas* on due process or on equal protection grounds, but the *Ross* court noted the *Douglas* court relied on both principles. (*Ross*, *supra*, 417 U.S. at p. 610.) It then explained that with respect to due process, "there are significant differences between the trial and appellate stages of a criminal proceeding," since the purpose of the trial court portion of the action is to give the state a forum in which to attempt to overcome the presumption of innocence, while an appeal is usually initiated by a convicted defendant who needs counsel not to protect against being haled into court but to overturn a determination of guilt. (*Ibid.*) The court concluded: "This difference is significant for, while no one would agree that the State may simply dispense with the trial stage of proceedings without a criminal defendant's consent, it is clear that the State need not provide any appeal at all. *McKane v. Durston*, 153 U.S. 684 (1894). The fact that an appeal *has* been provided does not automatically mean that a State then acts unfairly by refusing to provide counsel to indigent defendants at every stage of the way. *Douglas v. California*, *supra*. Unfairness results only if indigents are singled out by the State and denied meaningful access to the appellate system because of their poverty. That question is more profitably considered under an equal protection analysis." (*Ross*, *supra* at p. 611.)

We also find *Douglas* distinguishable. Because the California rule the *Douglas* court invalidated asked a Court of Appeal to conduct "an ex parte examination of the

16

record" and decide whether appointment of counsel would be helpful, it required a "preliminary showing of merit" before the appellant could know whether he or she would have a more effective appeal with counsel or a less effective one without. (*Douglas*, *supra*, 372 U.S. at pp. 356-357.) In other words, the California procedure affected "the right to appeal" itself. (*Ibid.*) Here, the right to appeal has not been affected, and there can be no prejudging of the merits of the appeal at an early stage by the court that is to assess the validity of the trial court's act. In addition, Lopez's interest in retaining the dismissal she obtained after the trial court granted her suppression motion is undoubtedly less weighty than that of a defendant who has been "convicted of a misdemeanor" (rule 8.851(a)(1), (a)(2)) and is trying to overturn the sentence.

In sum, then, the rule we deduce is that the due process clause allows a legislative body to limit the right to appointment of counsel to only those defendants who have been sentenced to actual imprisonment. As discussed *ante*, petitioner herself admits the legislative body that drafted rule 8.851 deliberately chose to limit the right to appointed counsel in the appellate division to those defendants who had been convicted of a misdemeanor. We now turn to whether that decision violates the equal protection clause.

As previously described, petitioner challenges rule 8.851 on its face and asks us to find that the appellate division may not refuse to appoint counsel for an indigent defendant acting as respondent on appeal because otherwise "all [such a defendant] can do is hope the appeals court will find anything in the record to justify affirming her judgment while the rich man has the opportunity to have counsel fully and effectively

17

defend his judgment." In other words, on the equal protection issue petitioner primarily points to an alleged "disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable." (*Ross*, *supra*, 417 U.S. at p. 609.)

As we discussed at oral argument, the paucity of equal protection analysis petitioner provided in her briefs greatly complicates this court's task. At times, she appears to complain about disparate treatment between appellants and respondents, and at other times she argues an equal protection violation has occurred because indigent litigants are being treated less favorably than wealthy ones. Petitioner does not discuss to what extent either of these pairs of classes is similarly situated, and she does not explain whether we should look for a rational basis or for something weightier when deciding whether rule 8.851's differentiation between misdemeanor defendants who have been convicted and those who have not passes constitutional muster.

We find the following passage from *Ross* particularly instructive: "Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed without doing violence to principles recognized in other decisions of this Court. The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,' [citation], nor does it require the State to 'equalize economic conditions.' [Citation.] It does require that the state appellate system be 'free of unreasoned distinctions,' [citation], and that indigents have an adequate opportunity to present their claims fairly within the adversary system. [Citations.] The State cannot adopt procedures which leave an

indigent defendant 'entirely cut off from any appeal at all,' by virtue of his indigency, [citation], or extend to such indigent defendants merely a 'meaningless ritual' while others in better economic circumstances have a 'meaningful appeal.' [Citation.] The question is not one of absolutes, but one of degrees." (*Ross*, *supra*, 417 U.S. at p. 612, fn. omitted.)

In this case, limiting the right to appointed counsel in the appellate division to only those defendants who have been convicted of a misdemeanor is not an "unreasoned distinction." (*Ross*, *supra*, 417 U.S. at p. 612.) As the previous discussion explains, appointed counsel does not become matter of right until a defendant faces uncounseled imprisonment.

We again emphasize that deciding whether to offer more than the Constitution requires with respect to the right to appointed counsel is a legislative act. (*Ross*, *supra*, 417 U.S. at p. 618 ["We do not mean by this opinion to in any way discourage those States which have, as a matter of legislative choice, made counsel available to convicted defendants at all stages of judicial review."].) To our knowledge, the only way a litigant in the appellate division can be subjected to actual imprisonment is if he or she has been convicted of a misdemeanor. (See Pen. Code, §§ 19.6 [no imprisonment in infraction cases], 1466 [appellate division hears appeals in misdemeanor and infraction cases].) Limiting the right to appointed counsel on appeal in the appellate division to only those misdemeanor defendants who have suffered a conviction provides counsel to those with the best likelihood of having a clearly established right to it under the due process clause,

while denying it to those who possess no such right.  These two classes are therefore not "arguably indistinguishable."  (*Ross*, at p. 609.)

This limitation also recognizes that the interest a convicted defendant seeks to protect on appeal is weightier than the interest of a party like Lopez, who faces no uncounseled imprisonment even if the appeal results in a reversal and the People resume prosecution.  Rule 8.851 does not deprive Lopez of the right to appeal, and we have explained why the petition fails to show that the appeal in her case would be a "meaningless ritual" unless she is appointed counsel.  (*Ross*, *supra*, 417 U.S. at p. 612.) It therefore appears to pass muster under the rules discussed herein.

In choosing to mount only a facial attack on rule 8.851, petitioner has not asked us to find that counsel is appropriate for Lopez, in particular, because of unique facts of her case.  While we note the petition mentions in passing that Lopez is not fluent in English, our information on this topic is scant.  It is, in fact, limited to a statement in the petition that Lopez does "not have any legal training," "does not speak English," and, "other than being able to perform rudimentary tasks such as dating documents and printing her name, she does not read or write English."  From this, petitioner asks us to conclude that, "If a stay is not granted [Lopez] will have no choice but to sit back and hope that the government's opening brief, which will be prepared by experienced government lawyers, will not be enough to persuade this court that the lower court judgment should be reversed."

20

The record does not show that Lopez's appeal will be a "meaningless ritual" (*Douglas*, *supra*, 372 U.S. at p. 358) because of her difficulties with the English language. First, in a California appeal, unlike in the trial court, Lopez will reap the benefit of standards of review and other procedural tools that are designed to protect the ruling the trial court has already made.[6] For example, "[a] judgment or order of a lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." (*Hernandez v. Superior Court* (1992) 9 Cal.App.4th 1183, 1190.) Although an appellate court independently reviews whether the trial court properly applied the law regarding

---

[6] The petition cites what purport to be statistics showing that the reversal rate is unusually high when the People appeal from the granting of a suppression motion. Rather than statistics from which we can draw conclusions, however, what petitioner has provided is a list of cases and this statement in the unverified memorandum supporting the petition: "Since January 2010, the government has filed at least twenty-five appeals (including writ petitions) challenging the granting of a suppression motion." We do not know how many times the People have sought appellate review (if it was in fact more than 25), in what courts, and how and by whom these data were compiled. Because we have no statistics from which we can draw the comparative inferences petitioner suggests, we assign no evidentiary value to the figures on which the first few pages of the petition's supporting memorandum rely. In addition, even were the petition correct that reviewing courts often or even typically appoint counsel for respondents when the People appeal the granting of a suppression motion, we would find this fact irrelevant to the petition. (See *Ross*, *supra*, 417 U.S. at pp. 618-619 [encouraging states to offer more in the way of counsel than the federal Constitution requires and entrusting that decision to state legislative bodies].) In fact, rule 8.851 itself offers more than we conclude is required, since it requires appointment of counsel for defendants who have been convicted of misdemeanors but received sentences consisting of nothing but fines or serious collateral consequences instead of only offering appointed counsel to those misdemeanor defendants who have been sentenced to actual imprisonment. (Rule 8.851(a)(1)(A).)

search and seizure under the Fourth Amendment, it still defers to any factual findings that are supported by substantial evidence. (*People v. Ayala* (2000) 24 Cal.4th 243, 279.) We assume our colleagues in the appellate division perform their official duty in accordance with these rules of law. (Evid. Code, § 664.) Petitioner has not addressed why safeguards such as these do not protect, or at least affect, the extent of her Fourteenth Amendment rights. (Cf. *Ross*, *supra*, 417 U.S. at p. 616 [noting "the nature of discretionary review in the Supreme Court of North Carolina" helped decrease the burden to an appellant seeking such review without counsel].)

Second, the record fails to support the suggestion that Lopez will be unable to file a brief at all, such that the appellate division will decide the People's appeal "based on its review of the Superior Court record . . . alone." "In contemporary urban society, the non-English speaking individual has access to a variety of sources for language assistance. Members of his family, friends or neighbors—born or schooled here—may provide aid. Private organizations also exist to aid immigrants." (*Jara v. Municipal Court* (1978) 21 Cal.3d 181, 184.) Since the record contains so little detail about Lopez's language difficulties, the record does not support any claim that counsel must be appointed for Lopez, individually, because her status as a non-English speaker means the Fourteenth Amendment somehow requires that relief.

At oral argument, petitioner's counsel referred to three cases that had not been briefed. Despite counsel's announcing his intention to discuss these cases in two letters filed on May 15 and May 23, 2017, we are aware of no authority allowing a party to

delay mention of cases that were in existence when the briefs were prepared. Even if it applies to a writ petition arising from a misdemeanor case,[7] California Rules of Court, rule 8.254 only allows a party to bring to our attention "significant new authority, including new legislation, *that was not available in time to be included in the last brief that the party filed or could have filed*." (Cal. Rules of Court, rule 8.254(a), italics added.) The three unbriefed cases on which petitioner wants to rely were published in 1992, 1998, and 2008. We are therefore not obligated to consider them.

Even if we do consider petitioner's three cases, which are *Claudio v. Scully* (2d Cir. 1992) 982 F.2d 798 (*Claudio*), *United States ex rel. Thomas v. O'Leary* (7th Cir. 1998) 856 F.2d 1011 (*O'Leary*), and *Commonwealth v. Goewey* (2008) 452 Mass. 399 (*Goewey*), we find them unavailing. First, and as counsel acknowledged at oral argument, "lower federal court decisions on federal questions are persuasive authority, but they are not binding on this court." (*Credit Managers Assn. of California v. Countrywide Home Loans, Inc.* (2006) 144 Cal.App.4th 590, 598.) We therefore need not follow *Claudio* or *O'Leary*. The same is true of *Goewey*, which is an out-of-state case. (See, e.g., *Bowen v. Ziasun Technologies, Inc.* (2004) 116 Cal.App.4th 777, 786 [out-of-state cases can be persuasive authority].)

---

[7] California Rules of Court, rule 8.254 allows a party to submit a letter citing new authorities, but that rule appears to only apply to appeals. We see no analogous provision for writ petitions.

23

Second, we find *Claudio*, *O'Leary*, and *Goewey* unpersuasive. *Claudio* and *O'Leary* are both easily distinguishable, as they involve murder charges rather than misdemeanor charges, and as both defendants in those cases were actually sentenced to prison. (*Claudio*, *supra*, 982 F.2d at p. 800; *O'Leary*, *supra*, 856 F.2d at p. 1013.) *Goewey*, which involved an appeal from the pretrial granting of a suppression motion, is potentially more apt. However, the most the *Goewey* court offers us to explain why counsel must be afforded to pretrial respondents on appeal if counsel is afforded to pretrial appellants on appeal is that "the same general principles apply" to appellants and respondents on appeal. (*Goewey*, *supra*, 452 Mass. at p. 403.) As we have now explained, the matter is much more complicated. *Goewey*'s superficial analysis does not affect our holding.

For the foregoing reasons, we reject petitioner's challenge to rule 8.851 under the Sixth and Fourteenth Amendments to the United States Constitution. While we agree that Lopez might fare better as the respondent on appeal to the appellate division if she had counsel, the petition has failed to show that appointment of counsel for Lopez or any other respondent on appeal is mandated by the Sixth or Fourteenth Amendments.

C. *The record does not support the contention that the appellate division is requiring petitioner to represent Lopez on appeal*

Petitioner's final contention is that the appellate division is forcing her to represent Lopez on appeal even though Government Code section 27706, which establishes a public defender's duties, allows for no such representation. The petition's prayer asks us

24

to:  "Issue a judgment declaring the San Bernardino County Superior Court may not appoint the Public Defender to represent indigent appellees in misdemeanor criminal appeals, or declare the Public Defender to remain appointed in cases where the Public Defender previously represented an indigent appellee in the Superior Court."

We decline to pass on this issue, as we see no proof that the appellate division is doing either of these things.  First, we noted *ante* that the allegation that the appellate division still considers petitioner to represent Lopez came to us in the form of an e-mail from the deputy public defender who tried to arrange for appointment of counsel (other than petitioner) for Lopez.  We are unclear how much evidentiary weight, if any, to assign to this e-mail, the contents of which are neither independently verified nor repeated in any other portion of the record.  We note, however, that the e-mail itself is internally inconsistent, as it says both that "the Appellate Department's position is that [petitioner] is still counsel," and that petitioner "can represent M[s]. Lopez if they so choose, or petition the Fourth District for a writ."  Even if we find evidentiary worth in this portion of the record, we see in it no proof that the appellate division is denying petitioner the right to decide whether or not to represent Lopez on the People's appeal.

More fundamentally, the relief petitioner requests sounds more like a declaratory judgment than a writ of mandate.  In fact, the cover page indicates petitioner's intent that we consider a "petition for writ of mandate *and declaratory relief*" (italics added), and, as noted *ante*, the prayer asks us to enter "*judgment*" declaring certain things (italics added).  We may not do this on a mandamus petition asking us to review the propriety of a

25

judicial order. Here, petitioner presents no evidence that the appellate division has exposed it to sanctions for failing to represent Lopez, refused to accept a brief from Lopez that was not prepared by petitioner's office, or otherwise given effect to the alleged statement by a court clerk that petitioner's office is still counsel of record. "[W]e are asked to direct the trial court to perform an act which, on the record, it has never refused to perform. Ordinarily, mandate would not lie in such a situation." (*Lohman v. Superior Court* (1978) 81 Cal.App.3d 90, 98.)[8]

DISPOSITION

The petition is denied.

CERTIFIED FOR PUBLICATION

RAMIREZ
P. J.

We concur:

McKINSTER
J.

CODRINGTON
J.

---

[8] While the appellate division denied a petition making the same argument petitioner makes here, it did so summarily, and may have done so because it has not, in fact, compelled petitioner to represent Lopez.