NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us.

22-P-66                                              Appeals Court

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 22164  vs.  SEX
OFFENDER REGISTRY BOARD.

No. 22-P-66.

Suffolk.     March 13, 2023. - September 28, 2023.

Present:  Milkey, Singh, & Brennan, JJ.


Sex Offender.  Evidence, Sex offender, Presumptions and burden
    of proof, Prison record.  Constitutional Law, Sex offender,
    Assistance of counsel.  Practice, Civil, Sex offender,
    Assistance of counsel, Presumptions and burden of proof.
    Administrative Law, Regulations.


    Civil action commenced in the Superior Court Department on
October 17, 2019.

    The case was heard by Jackie Cowin, J., on a motion for
judgment on the pleadings.


    Fred J. Burkholder for the plaintiff.
    David L. Chenail for the defendant.


    MILKEY, J.  In 2011, the Sex Offender Registry Board

(board) classified John Doe, who had been convicted of rape, as

a level three sex offender.  A Superior Court judge affirmed

that classification in 2014; Doe did not appeal from that

decision.  Five years later, Doe requested that the board vacate his classification and grant him a new hearing based on alleged ineffective assistance of counsel.  The board denied his motion, and, in 2021, a second Superior Court judge upheld the board's decision.  On Doe's further appeal, we affirm.

Background.  In 1991, a Superior Court jury found Doe guilty of raping a nineteen year old woman who told police that he had sexually assaulted her while holding her hostage, threatening to kill her, and choking her.  He was sentenced to from eight to twelve years of prison, to be served from and after a 1990 armed burglary conviction for which he had received a twelve to twenty year sentence.[1]  Doe refused sex offender treatment while incarcerated in Massachusetts.  During that incarceration, he was cited for over thirty disciplinary reports.

As noted, the board classified Doe as a level three sex offender in 2011, and a Superior Court judge affirmed that

---

[1] With respect to the armed burglary conviction, the record indicates that before breaking into the home in question, he told a third party he was going to go wait for a woman he knew in her home and kill her.  During the burglary, the defendant attempted to strike the woman's relative with a shot gun, before stealing the woman's car and fleeing.  He previously had been incarcerated in North Carolina for a breaking and entering charge, and he was convicted there of escaping his confinement.  He also was convicted of numerous other crimes, some of which involved violence.  He faced at least four charges of raping a child, but appears to have been ultimately acquitted of those.

classification in 2014 pursuant to G. L. c. 30A.  No further direct appeal was taken.  In urging the board to reopen his classification five years later, Doe claimed that both the attorney who represented him during his original classification hearing (hearing counsel), and the separate attorney who represented him in his appeal from the board's classification decision in the Superior Court (original appellate counsel), were constitutionally ineffective.[2]  The board rejected that argument, without prejudice to Doe's right to file a petition seeking reclassification pursuant to 803 Code Mass. Regs. § 1.31 (2016).  A Superior Court judge upheld the board's decision.

Discussion.  Whether to reopen Doe's long-closed classification proceeding comes down to a balancing of the interests of finality with any demonstrated unfairness to Doe. See Doe, Sex Offender Registry Bd. No. 209081 v. Sex Offender Registry Bd., 478 Mass. 454, 457-458 & n.7 (2017) (Doe No. 209081).  How to strike that balance falls to the board in the first instance, although the Supreme Judicial Court has recognized that the power to reopen classification proceedings "must be sparingly used" (citation omitted).  Id. at 457-458. "[F]actors generally to be weighed by the [board] include the

_____

[2] Original appellate counsel was appointed to handle the G. L. c. 30A appeal in the Superior Court after hearing counsel withdrew because of an "irretrievable break down in the attorney client relationship."

advantages of preserving finality, the desire for stability, the degree of haste or care in making the first decision, timeliness, and the specific equities involved."  Id. at 458. Courts are to review the judgment call that the board has made under a deferential abuse of discretion standard.  Id. at 457. Our review of the 2021 Superior Court decision is de novo.  See Doe, Sex Offender Registry Bd. No. 390261 v. Sex Offender Registry Bd., 98 Mass. App. Ct. 219, 224 (2020).

Before turning to the substance of Doe's claims, we address a preliminary matter raised by the board.  It is undisputed that the board's regulations provide Doe a right to petition for reclassification.  See Doe No. 209081, 478 Mass. at 459. Although Doe would in that proceeding bear the burden of producing evidence that circumstances had changed, that should be an easy burden to meet now that over a decade has passed since his original classification, at least some of which Doe has spent in the community.  As we have noted, "the bar for showing changed circumstances is 'very low' and . . . the mere passage of time generally qualifies."  See Doe, Sex Offender Registry Bd. No. 6969 v. Sex Offender Registry Bd., 99 Mass. App. Ct. 533, 541 n.7 (2021).  Once Doe has met his burden, the board would bear the burden of persuasion -- based on "clear and convincing evidence" -- "that the classification is current and correct."  See Noe, Sex Offender Registry Bd. No. 5340 v. Sex

Offender Registry Bd., 480 Mass. 195, 204 (2018).  Thus, Doe already enjoys the opportunity to pursue reclassification with rights nearly identical to those he seeks through the current appeal.  Based on this, the board argues that Doe is precluded from pursuing this appeal, especially now that so much time has passed.  While there is some force to this argument, we decline to adopt a rule that the available administrative remedy per se precludes the present action.  However, as the Supreme Judicial Court has instructed, the availability of the administrative remedy "is an additional factor specific to the board's regulatory scheme weighing in favor of the [board's] decision to reject [a sex offender's] request to reopen his initial classification proceeding [many] years after it had concluded."  See Doe No. 209081, 478 Mass. at 459.

We turn to Doe's claim of ineffective assistance of counsel.  In reviewing a claim of ineffective assistance of counsel, "we first consider 'whether there has been serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer.'"  Poe v. Sex Offender Registry Bd., 456 Mass. 801, 812 (2010), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  If so, we then consider whether such deficient representation resulted in prejudice.  Poe, 456 Mass. at 812-813, citing Care & Protection

of Georgette, 439 Mass. 28, 33 n.7 (2003).  Prejudice in this context means "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different" (quotations and citations omitted).  Poe, supra at 813.  We turn then to the specific ineffective claims that Doe is making.

1.  Ineffective assistance of hearing counsel.  Doe contends that his hearing counsel was ineffective for failing adequately to address one of the over thirty disciplinary reports that he received while incarcerated.  That report, dated January 19, 2005, stated that the reason for a particular prison transfer was that Doe was "displaying unusual behavior towards a female staff member."  Doe argues that any suggestion in the report that he exhibited behavior of a sexual nature during the incident is inaccurate.[3]  Such a misimpression was critical, Doe argues, because it provided the only evidence of recent misconduct that could have been construed as sexual.

_____

[3] According to the affidavit Doe submitted in support of his motion for a new classification proceeding, he told his hearing counsel that the "unusual behavior" had to do with assisting a correction officer in filing a complaint against male correctional employees.  He further alleged that he provided his counsel with an April 20, 2005 affidavit from a North Central Correctional Institution (NCCI) superintendent that contradicted the disciplinary report's stated reason for his transfer.  In particular, the affidavit stated that Doe was transferred "pending an ongoing investigation of staff misconduct at NCCI that involved [Doe]" and that Doe was transferred "for his own safety."

Furthermore, he argues that there could not have been a tactical reason for hearing counsel not to challenge the report.

Assuming that hearing counsel's performance was deficient in failing to adequately address the January 19, 2005 report, Doe has not demonstrated sufficient prejudice to warrant relief. His disciplinary history beyond that particular report was lengthy and serious, including insubordination toward correction officers, fighting, throwing a pot of hot coffee at an inmate, and assaulting another inmate with a knife.  He has not contested the accuracy of any of these other reports.  Had the potential misimpression left by the one report been challenged, it is unlikely that the board's over-all assessment of Doe's behavior while incarcerated would have been altered.  Indeed, in the summary of the hearing decision, the hearing officer mentioned the "numerous" disciplinary reports without emphasis on any particular report.  Nowhere in her twenty-seven page decision did the hearing examiner mention the January 19, 2005 incident as evidence of sexual misconduct.

Moreover, Doe's disciplinary history was only one of several factors that weighed in favor of a level three classification.  Those factors included Doe's lengthy criminal history consisting of multiple serious sexual and violent offenses, and the lack of any subsequent sex offender treatment or offense-free time in the community.  On this record, we

conclude that there was not "a reasonable probability that but for [hearing] counsel's unprofessional errors, the result of the proceeding would have been different" (quotations and citations omitted).  Poe, 456 Mass. at 813.

2.  Ineffective assistance of original appellate counsel. Doe's original appellate counsel challenged the board's classification decision by filing an appeal pursuant to G. L. c. 30A, § 14.  See Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 107-108 (2014) (Doe No. 68549).  In accordance with applicable procedures, the board filed the administrative record as its answer.  Based on that record, the merits of Doe's appeal were then resolved by a Superior Court judge in 2014 through cross motions for judgment on the pleadings.  Doe makes no claim that the briefing that original appellate counsel provided the judge was deficient in form or substance.  Rather, he claims his counsel was constitutionally ineffective in various other aspects, the first being by his failure to attend the scheduled hearing, which allowed the matter to be heard on the papers without oral argument by either side.[4]

The reasons for counsel's not attending the scheduled G. L. c. 30A hearing are somewhat muddled on the current record.  The

---

[4] The board's counsel did attend the hearing, but agreed to waive oral argument after Doe's counsel did not appear.

hearing had been scheduled for an earlier date, and there is a suggestion that Doe's original appellate counsel claimed not to have received notice of the new hearing date. However, there is also a reference to a statement from original appellate counsel that his not attending the hearing was strategic, based on his concern that his attendance would reveal that Doe had just been arraigned (with a $50,000 bail) on new charges in 2013, including, among other offenses, rape and assault and battery.[5] Whatever the explanation for counsel's allowing the matter to be heard on the papers -- the quality of which Doe again does not challenge -- we discern no actionable ineffective assistance based on this issue. Assuming original appellate counsel erred by not attending the c. 30A hearing, Doe has not demonstrated prejudice resulting from counsel's absence, especially given

---

[5] Doe also claims that his counsel was ineffective for failing to pursue a habeas corpus petition so that he could have attended the hearing on the cross motions. However, he cannot demonstrate how his personal attendance at any such hearing would have assisted him, especially given that the court's review was limited to the administrative record. See Doe No. 68549, 470 Mass. at 108. Although Doe argues that "due process should mandate the right to be present" in G. L. c. 30A hearings, even in criminal proceedings, there is generally no right to be present at appellate stages of proceedings. See Reporters' Notes to Rule 18 (a), Mass. Ann. Laws Court Rules, Rules of Criminal Procedure (LexisNexis 2022-2023) (criminal defendant's presence generally not required at posttrial proceedings). Moreover, Mass. R. Crim. P. 18 (a) (3), as amended, 489 Mass. 1503, provides that a defendant need not be present "at any proceeding where evidence is not to be taken."

that had the oral argument gone forward, the board's lawyer would have had the opportunity to argue as well.

As noted, after Doe lost his initial appeal in the Superior Court, original appellate counsel did not file a notice of appeal from the judgment, a step that was necessary to allow the case to proceed on appeal to this court. Doe claims that this failure itself constituted ineffective assistance that warrants automatically reopening his original classification proceeding. The precise nature of this argument is important. In the face of strong record evidence supporting a level three classification,[6] Doe has not made any showing of what potentially winning arguments original appellate counsel might have made to this court. Instead, Doe is arguing that original appellate counsel never informed him that he lost his Superior Court appeal; that had he been so informed, he would have insisted that counsel pursue a further appeal; and that simply by failing to discuss the viability of a potential further appeal with him, counsel's conduct amounted to "serious incompetency, inefficiency, or inattention" that fell "measurably below that which might be expected from an ordinary fallible lawyer" (citation omitted). Poe, 456 Mass. at 812. This argument has

---

[6] In making this assessment, we have not taken into account the new assault charges that Doe faced in 2013, which were not before the board in its classification proceeding.

at least some force. Cf. Commonwealth v. Frank, 425 Mass. 182, 184 (1997) (given criminal defendant's statutory right to appeal and his constitutional right to counsel at that appeal, counsel's failure to perfect his appeal was "particularly egregious in that it essentially waived [the defendant's] opportunity to make a case on the merits" [citation omitted]).

However, there are two independent impediments to such an argument succeeding. The first is that Doe has not met his burden of establishing what in fact occurred here. Notably, his claim that original appellate counsel unilaterally decided not to pursue a further appeal without consulting him was supported only by Doe's own affidavit; Doe did not file an affidavit from his original appellate counsel substantiating that claim, nor did he supply any adequate explanation for his failure to do so.[7] Under these circumstances, the board did not abuse its discretion in finding Doe's proof of inadequate assistance insufficient. Cf. Commonwealth v. Savage, 51 Mass. App. Ct. 500, 505-506 & n.6 (2001) (where defendant alleged that counsel failed to advise him of rights he would give up should he pursue jury trial, "[c]onspicuously absent was an affidavit from trial

---

[7] Current appellate counsel drafted an affidavit for original appellate counsel to sign that would have addressed these issues. Original counsel did not respond to this request, which current counsel suggests, without further explanation, was "believed to be because of injuries sustained in a recent automobile accident."

counsel supporting the defendant's contention," and therefore "judge was entitled to discount the defendant's affidavit as self-serving, conclusory, and lacking in credibility" without evidentiary hearing). See generally Commonwealth v. Miller, 101 Mass. App. Ct. 344, 345, 351-353 (2022). In sum, adequate proof of the factual premise of Doe's argument is wanting.

Even were we to pass over these proof issues, and even were we to assume arguendo that original appellate counsel's behavior was so out of bounds as to allow Doe to satisfy the first prong of the civil Saferian standard, Doe's argument that this would entitle him to vacate the board's classification decision would fail. That is because Doe would still have to satisfy the second prong of the test, that is, he would have to show that there is a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different" (quotations and citations omitted). Poe, 456 Mass. at 813. Doe has not attempted to show, much less shown, how he was prejudiced by counsel's failure to file an appeal.

Unable to demonstrate how he was harmed, Doe seeks to draw upon analogies to criminal law to argue that this is one of those rare instances where he should be allowed to prove actionable ineffective assistance without demonstrating any prejudice. We are unpersuaded.

To be sure, it is well established that when a criminal defendant's counsel has failed to file a timely notice for a direct appeal from his conviction, we generally have "fully restored the defendant's appellate rights . . . without consideration of the strength or weakness of [the defendant's] underlying appellate arguments." Commonwealth v. Alvarez, 69 Mass. App. Ct. 438, 442 (2007). Moreover, because of the serious deprivation of liberty interests involved, courts often have imported protections that apply to criminal defendants into the law of sex offender registration. See, e.g., Poe, 456 Mass. at 811-813 (recognizing right to counsel and right to effective assistance of counsel). However, the Supreme Judicial Court on many occasions has rejected wholesale importation of criminal law concepts in this context. See, e.g., Doe, Sex Offender Registry Bd. No. 339940 v. Sex Offender Registry Bd., 488 Mass. 15, 26 (2021) (allowing relaxed hearsay rules); Doe, Sex Offender Registry Bd. No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 309 (2015) (Doe No. 380316) (rejecting proof beyond reasonable doubt standard). The fact that the court has held that a sex offender can bring an ineffective assistance claim with respect to a board classification proceeding applying a standard akin to the two-pronged Saferian test hardly means that the court blindly intended to incorporate all aspects of

the application of such law in the sex offender registration context.

Close scrutiny reveals why Doe's analogy to criminal law breaks down in this specific instance. For many reasons, a criminal defendant's right to take a direct appeal from a judgment of conviction is considered sacrosanct. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) ("the right to appointed counsel extends to the first appeal of right, and no further"). Cf. Commonwealth v. Coral, 72 Mass. App. Ct. 222, 224-225, 227 (2008), cert. denied, 556 U.S. 1137 (2009) (distinguishing between first appeals as of right and second-tier discretionary appeals, and finding that defendant was not entitled to counsel to represent him in various stages of proceedings relating to withdrawal of his guilty plea). The context before us is different. Doe already had the opportunity to pursue a direct appeal, his G. L. c. 30A appeal in the Superior Court. In any further appeal, the role of this court would be identical to that of the judge in the initial appeal: same administrative record, same legal issues, and same standard of review. See Doe, Sex Offender Registry Bd. No. 524553 v. Sex Offender Registry Bd., 98 Mass. App. Ct. 525, 527 n.3 (2020), and cases cited.[8] Whether to pursue such a second-level appeal,

---

[8] In other contexts where a party has a right to counsel -- such as in care and protection cases, see Care & Protection of

even one Doe could have pursued as of right, lacks the sacrosanct quality of a criminal defendant's right to pursue a direct appeal from a judgment of conviction.[9]

Moreover, because Doe and other sex offenders have a right to seek reclassification pursuant to the board's regulations, it makes particular sense that they should not be able to reopen long-concluded classification proceedings absent some showing of prejudice. Cf. Commonwealth v. Patton, 458 Mass. 119, 129-130 (2010) (recognizing that even where probationer's "right to appeal has been extinguished because of counsel's ineffectiveness[,] . . . the State may provide some alternative procedure" to direct appeal).

In fact, the Supreme Judicial Court already has implicitly rejected the claim that prejudice need not be shown when alleging ineffective assistance of counsel in the sex offender registration context. See Doe No. 209081, 478 Mass. at 455. In that case, a litigant effectively was denied the right to

---

Stephen, 401 Mass. 144, 149 (1987), and sexually dangerous person cases, see Commonwealth v. Sargent, 449 Mass. 576, 580 (2007) -- this court has a fundamentally different role from the trial court.

[9] Of course, even in the pure criminal law context, the right to counsel is not guaranteed in all matters. See, e.g., Commonwealth v. Conceicao, 388 Mass. 255, 258, 260 (1983) (noting in context of motions for new trial that "indigent defendants do not have an absolute right to have counsel appointed to represent them in all postconviction proceedings").

counsel at his initial classification hearing and thereafter did not file an appeal.  Id. at 455-457.  The court nevertheless held that there was no abuse of discretion in the board's denial of the litigant's motion to reopen proceedings because he did not "adequately explain the delay [in seeking review] and did not allege prejudice."[10]  Id. at 455.  According to the court, "[a]lthough the public's interest in such finality does not trump an interest in rectifying a miscarriage of justice, here, because the [litigant] failed to show prejudice, it was not unreasonable for the board to conclude that finality and timeliness outweighed the [litigant's] interest in reopening the proceedings."  Id. at 459-460.  Even the dissent in that case recognized that a showing of prejudice was required.  See id. at 467 (Gants, C.J., dissenting) ("We have held that failure to file a timely notice of appeal constitutes ineffective assistance of counsel where the defendant would have prevailed on appeal" [emphasis added]).  Notably, the court upheld the board's refusal to reopen the proceedings even though the harm that the litigant there had suffered -- deprivation of counsel

---

[10] In the case before us, Doe did not file his motion seeking a new hearing for some five years.  Even if we accept his contention that he was unaware that no appeal to this court had been filed, it took his new counsel several months to seek to reopen the proceedings.

at the initial classification hearing stage –- was more significant than any harm suffered in the case before us.

Further support for the board's position also can be found in Patton, 458 Mass. at 128-130 (affirming denial of probationer's motion for new trial). That case involved a probationer who argued that his counsel was ineffective for failing to appeal from a judgment of a probation violation that resulted in the revocation of his probation despite the probationer's specific instruction to file an appeal. See id. at 129. Borrowing from criminal law, the court found that this failure automatically constituted ineffective assistance. Id. Nevertheless, the court went on to conclude that, unlike in the criminal context, a showing of prejudice was required before a forfeited appeal would be restored. Id. at 130. Thus, even though ineffective assistance had been shown, the court was called upon to "decide if the probationer was prejudiced by counsel's failure." Id.

In fact, even in the context of direct criminal appeals, "fully restor[ing] the defendant's appellate rights" does not necessarily mean automatically reinstating the defendant's appeal. See Alvarez, 69 Mass. App. Ct. at 442 & n.1. See also White v. Commonwealth, 479 Mass. 1023, 1025 (2018) (rejecting "the proposition that a defendant will always have the option of proceeding with a reinstated direct appeal" and concluding best

course in circumstances was to proceed by motion for new trial rather than direct appeal). Indeed, in Commonwealth v. Kegler, 65 Mass. App. Ct. 907, 908 (2006), where counsel had filed his brief late and the question before us was whether to reinstate the criminal defendant's direct appeal, we proceeded to review the "fully briefed" merits of the underlying appellate claims and concluded "that the issues raised would not warrant reversal of the defendant's convictions." We ultimately affirmed the denial of the motion to reinstate the appeal. Id. at 909. Contrast Commonwealth v. Goewey, 452 Mass. 399, 405 (2008) (remanding for further proceedings where only the Commonwealth filed an appellate brief, finding "unilateral review[,] . . . unaided by any advocacy for the defense, was not an adequate substitute for the defendant's right to the effective assistance of counsel"). Here, were we to consider the forfeited appeal, we would have a similar benefit of knowing what Doe's appellate arguments would have been because they were briefed in the Superior Court. Indeed, any arguments not raised before the board and Superior Court would have been waived. See Doe, Sex Offender Registry Bd. No. 3974 v. Sex Offender Registry Bd., 457 Mass. 53, 56-58 (2010). Were we to review his claims "as if the underlying issues were before us on direct appeal," see Alvarez, supra at 443, he could not prevail.

The closest that Doe comes to demonstrating prejudice is to point to the possibility that had his appellate counsel appealed, he might have been able to secure the benefit of an argument he never made.  Specifically, Doe argues that if his original appellate counsel had filed an appeal from the 2014 Superior Court judgment, and if that appeal had remained pending as of December 11, 2015, the date the Supreme Judicial Court published its opinion in Doe No. 380316, 473 Mass. at 297, then he would have been entitled to having his hearing reopened under the stricter "clear and convincing" standard adopted in that case.  See id. at 314.  In other words, Doe's only prejudice argument is based not on his counsel's forfeiting potentially winning arguments, but on a speculative happenstance of timing.  There is at least some factual doubt about whether the appeal he never took would have remained pending when Doe No. 380316 was issued.  In any event, however, as we have noted, Doe is now in a position to try to take advantage of the clear and convincing standard by filing for reclassification.  In light of this, we conclude that the board acted well within its discretion in declining to reopen Doe's classification proceedings.

In sum, we decline to adopt a rule that sex offenders who have lost their initial appeal from the board's classification decision, but for whatever reason have not pursued a further appeal, automatically get to reopen the classification

proceedings without any showing of prejudice.  Because we conclude that the board did not abuse its discretion in leaving Doe to pursue reclassification pursuant to its regulations, we affirm the judgment affirming the board's order denying Doe's motion seeking to reopen the classification proceedings.

<u>So ordered</u>.

SINGH, J. (dissenting).  Over a decade ago, the Supreme Judicial Court held that "the principle of fundamental fairness that underlies the statutory entitlement to counsel would be ill-served if sex offenders were afforded something less than what we usually refer to as the effective assistance of counsel."  Poe v. Sex Offender Registry Bd., 456 Mass. 801, 813 (2010).  The court added that applying Commonwealth v. Saferian, 366 Mass. 89 (1974), and its progeny to ineffective assistance claims brought by sex offenders "brings the benefit of familiarity," Poe, supra at 814, quoting Loe v. Sex Offender Registry Bd., 73 Mass. App. Ct. 673, 686 (2009) (Sikora, J., concurring), and allows "attorneys, hearings examiners, and judges alike" to "rel[y] on the rich body of case law interpreting this standard," Poe, supra at 813-814.

This rich body of case law provides that, if an individual is deprived of the right to pursue an appeal as a result of the "ineffective assistance of . . . trial or appellate counsel in failing to preserve and perfect that right, then" the individual has made out a claim for ineffective assistance of counsel and "is entitled to a remedy."  White v. Commonwealth, 479 Mass. 1023, 1024 (2018).  John Doe's motion to vacate his level three classification established that Doe's Superior Court counsel (prior counsel) forfeited Doe's right to appeal to this court by

failing to file a notice of appeal, without Doe's consent. Nevertheless, the majority denies Doe his remedy.

The majority first justifies the Sex Offender Registry Board's (board's) summary denial of Doe's motion on the basis that adequate proof of the factual premise of Doe's argument was lacking, because Doe did not submit an affidavit of his prior counsel or adequately explain his failure to do so. However, Doe's motion was supported by the uncontradicted affidavits of both Doe and his newly appointed appellate counsel. Doe's appellate counsel explained that he had communicated with prior counsel about Doe's case and had received conflicting accounts of why he did not attend the G. L. c. 30A hearing. Doe's current appellate counsel also explained that he had prepared an affidavit for prior counsel's signature, outlining all of the ineffective assistance claims, but that prior counsel failed to respond.

In view of the proactive measures taken by Doe's appellate counsel to secure prior counsel's participation, Doe should not be faulted for failure to provide an affidavit of prior counsel. See Commonwealth v. Miller, 101 Mass. App. Ct. 344, 353 n.15 (2022) ("there may be innumerable fact-driven scenarios where trial counsel may decline to provide support for a motion alleging ineffective assistance of counsel. Thus, the level of detail required in appellate counsel's affidavit may be dictated

by the circumstances of each case").  Even if prior counsel had filed an affidavit asserting that he did timely advise Doe of the Superior Court decision and the merits of an appeal from that decision, the undisputed fact remains that he failed to file a notice of appeal.  Thus, even without prior counsel's affidavit, Doe established that his prior counsel failed to protect his appellate rights under circumstances where Doe wanted to pursue an appeal.[1]

The majority next questions whether prior counsel's failure to preserve Doe's appellate rights even constitutes professional incompetence, given the strength of the evidence supporting a level three classification.  Regardless of the merits of any given appeal, it is not counsel's prerogative to unilaterally decide not to pursue an appeal; rather, the decision whether or not to appeal belongs to the client.  See Roe v. Flores-Ortega, 528 U.S. 470, 474-477 (2000) (counsel's failure to file a notice

---

[1] Given Doe's persistent efforts to overturn his classification and the fact that he was classified at the highest level, there is no reason to doubt Doe's averment that he would have insisted on pursuing an appeal, had his counsel informed him of the Superior Court decision.  Indeed, the Committee for Public Counsel Services (CPCS) Assigned Counsel Manual provides:  "Except in extraordinary circumstances, counsel should advise a client who has been classified as a level 3 after an appeal to the Superior Court to appeal the classification decision."  Assigned Counsel Manual § M at 4.197 (June 12, 2023).  In any event, nothing in the record suggests that Doe's loss of appellate rights was the result of a "deliberate and counseled choice."  Commonwealth v. Frank, 425 Mass. 182, 185 n.2 (1997).

of appeal "cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task"). Allowing counsel to forfeit a client's right to appellate review based on counsel's own assessment that an appeal lacks merit casts counsel in the role of "amicus curiae" rather than advocate. Cf. Anders v. California, 386 U.S. 738, 744 (1967) (where court-appointed appellate counsel submitted letter to court indicating that counsel would not be submitting brief because counsel was of opinion that there was no merit to appeal, court stated that "constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae").

Counsel's failure to file a notice of appeal to protect Doe's rights in this case was deficient performance. See Commonwealth v. Patton, 458 Mass. 119, 129 (2010) (counsel ineffective where his omissions deprived petitioner of appeal); Commonwealth v. Goewey, 452 Mass. 399, 400, 402-403 (2008) (counsel ineffective where he failed to file opposition to Commonwealth's interlocutory appeal); Commonwealth v. Trussell, 68 Mass. App. Ct. 452, 460 (2007) (permitting untimely appeal to proceed where "defendant's motion papers suggest that failure to file a timely appeal resulted from an act or omission of counsel

to which the defendant did not assent," and "[n]othing in the Commonwealth's papers suggest[ed] otherwise").

The majority further faults Doe for failing to show how he was prejudiced by counsel's failure to file a notice of appeal because Doe did not identify any meritorious appellate issues. Although a person asserting an ineffective assistance claim is ordinarily required to show prejudice in order to overcome the "strong presumption of reliability," typically accorded to judicial proceedings, Flores-Ortega, 528 U.S. at 482, quoting United States v. Cronic, 466 U.S. 648, 659 n.26 (1984), this presumption is absent where counsel's alleged deficiencies "led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding itself," Flores-Ortega, supra at 483. See Cronic, supra at 658-659 (complete denial of counsel is "so likely to prejudice the accused that the cost of litigating [its] effect in a particular case is unjustified"). See also Commonwealth v. Millien, 474 Mass. 417, 431 (2016), quoting Commonwealth v. Curtis, 417 Mass. 619, 624 n.4 (1994) (Massachusetts prejudice standard "is at least as favorable to a defendant as is the Federal standard").

The "denial of [an] entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right, . . . demands a presumption of prejudice." Flores-Ortega, 528 U.S. at 483. Therefore, "[s]o long as a defendant

can show that 'counsel's constitutionally deficient performance deprive[d him] of an appeal that he otherwise would have taken,' courts are to 'presum[e] prejudice with no further showing from the defendant of the merits of his underlying claims.'" Garza v. Idaho, 139 S. Ct. 738, 747 (2019), quoting Flores-Ortega, supra at 484. See Commonwealth v. Alvarez, 69 Mass. App. Ct. 438, 441 (2007) ("the defendant is not required to specify or argue the appellate issues that he would raise were his appeal reinstated"). See also Goewey, 452 Mass. at 403 n.3, and cases cited ("[t]here is a distinction between . . . cases where a defendant is represented by counsel who provides substandard assistance and . . . cases where a defendant is represented by counsel who provides no assistance at all. In the limited class of cases falling into the latter category, it is said that prejudice can be presumed . . .").

Recognition of presumptive prejudice in these circumstances is not limited to purely criminal cases. In Patton, 458 Mass. at 129, the Supreme Judicial Court considered a probationer's claim of ineffective assistance based on counsel's failure to heed the probationer's request to timely appeal the result of his violation hearing. See Commonwealth v. Durling, 407 Mass. 108, 112 (1990), citing Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) ("Revocation hearings are not part of a criminal

prosecution"). The Supreme Judicial Court held, in relevant part, that it was

> "satisfied . . . that the probationer has proved a claim of ineffective assistance of counsel . . . . [because] [t]he failure of trial counsel to file a timely notice of appeal when specifically instructed by his client to do so deprived the probationer of an appeal to which he was entitled. This constitutes ineffective assistance of counsel. . . . Where a probationer has been deprived of his right to a direct appeal due to the ineffective assistance of counsel, he must either be retried or his appeal must be reinstated" (citations omitted).

Patton, supra. Patton thus concluded, as a matter of law, that counsel's failure to file the requested appeal constituted ineffective assistance of counsel. See id.

The majority's reliance on Patton in support of its conclusion that Doe was required to set forth the substantive arguments his counsel would have made on appeal is misplaced. After holding that counsel's failure to file the requested appeal constituted ineffective assistance, the Supreme Judicial Court said that the probationer's appellate rights could be restored through "some alternative procedure" so long as it was sufficient to cure the due process violation. Patton, 458 Mass. at 129. The court found that a motion filed pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), provided a sufficient "alternative procedure" for the probationer, who had already filed a rule 30 (b) motion in the trial court, the denial of which was the subject of the court's

review.[2]  Patton, supra at 129-130.  See Evitts v. Lucey, 469

U.S. 387, 399 (1985).  Critically, the Supreme Judicial Court

did not consider the substance of the probationer's claims of

error in Patton, until after making an implicit determination

that the loss of the probationer's appellate rights had been

cured by his subsequent filing of a rule 30 (b) motion.  Patton,

supra at 129-130.

Here, in contrast, there is no suggestion that Doe's

appellate rights have been restored.  Doe's motion to vacate was

not required to conform to the requirements of rule 30 (b),

which only applies to criminal proceedings, and it was

reasonable for him to conclude based on applicable precedent,

that his motion needed only to establish that his counsel's

deficiencies resulted in the loss of an appeal he wished to

pursue.  Likewise, the board was not required to adhere to the

standard of review applicable to motions filed under rule 30 (b)

in reviewing Doe's motion, which the board denied without a

hearing in a margin endorsement just a few days after it was

---

[2] A motion pursuant to rule 30 (b) "permits examination of the claimed errors to determine whether the defendant was deprived of any constitutionally protected rights by his failure to appeal."  Commonwealth v. Cowie, 404 Mass. 119, 123 (1989). Moreover, if a rule 30 (b) motion is denied, then a defendant "may appeal that denial and thus obtain appellate review of any issue that would have afforded the defendant relief had his appeal been timely filed."  Id.

filed.[3]  See Commonwealth v. Upton, 484 Mass. 155, 161-162 (2020), quoting Commonwealth v. Barry, 481 Mass. 388, 401, cert. denied, 140 S. Ct. 51 (2019) (under rule 30 [b], judge must evaluate "the seriousness of the issues raised and the adequacy of the defendant's showing on those issues" to determine whether substantial issue has been raised that requires evidentiary hearing).

The majority's contention that the Supreme Judicial Court has already implicitly rejected Doe's claim of presumptive prejudice in Doe, Sex Offender Registry Bd. No. 209081 v. Sex Offender Registry Bd., 478 Mass. 454 (2017) (Doe No. 209081), is also misplaced.  Unlike the petitioner in this case, the petitioner in Doe No. 209081 did not assert that his failure to timely appeal from his classification decision was based on an omission of counsel.  He had procedurally waived his claim that during his classification hearing the board had violated his right to due process.  In holding that the board had properly denied the petitioner's motion to reopen the proceeding because the petitioner had "failed to articulate in any manner how he was prejudiced by the error," id. at 458, the Supreme Judicial

---

[3] If the board's review of Doe's motion had been subject to the rule 30 (b) standard, his appellate counsel's failure to file an appeal would clearly have raised a serious issue warranting an evidentiary hearing if there was any question that prior counsel's failure to file a notice of appeal was the result of Doe's counseled choice.

Court held the petitioner to the same standard as a criminal defendant raising an unpreserved claim of error in a collateral attack on a conviction, see, e.g., Commonwealth v. LaChance, 469 Mass. 854, 856 (2014), cert. denied, 577 U.S. 922 (2015) ("where the defendant has procedurally waived his Sixth Amendment public trial claim by not raising it at trial, and later raises the claim as one of ineffective assistance of counsel in a collateral attack on his conviction, the defendant is required to show prejudice from counsel's inadequate performance . . . and the presumption of prejudice that would otherwise apply to a preserved claim of structural error does not apply").[4]  This case, in contrast, is not a collateral attack on the board's

---

[4] Notwithstanding the inapplicability of Doe No. 209081, 478 Mass. at 458, the majority cites to it in support of the position that delay in filing the motion justified the board's denial of Doe's motion to vacate. Ante at    .  Although the petitioner in that case failed to provide any explanation as to the delay, here Doe provided a detailed account as follows. Doe's prior counsel entered his appearance in the Superior Court on November 8, 2012, after an irretrievable breakdown in the attorney-client relationship between Doe and his hearing counsel that led hearing counsel to withdraw while Doe's Superior Court review was still pending.  On January 3, 2013, Doe was arrested on new charges, and unable to make bail, he remained in custody until February 1, 2017.  After his release, Doe was living at a mosque, where he was shot twice in his lower extremities by a man who targeted him based on his status as a level three sex offender.  After the shooting, which occurred on September 24, 2018, Doe reached out to prior counsel to inquire about the status of his G. L. c. 30A review, which he believed was still pending.  After prior counsel informed Doe that no notice of appeal had been filed, Doe requested new counsel, who was appointed on February 25, 2019, and filed a motion to vacate on Doe's behalf later that year.

classification decision, but an attempt by Doe to reinstate his right to appeal from that decision. Cf. Tuan Vu v. United States, 648 F.3d 111, 114 (2d Cir. 2011) (petition to reinstate appellate rights not collateral attack on sentence or conviction).

Nevertheless, the majority distinguishes a sex offender appeal to this court by characterizing it as a "second-level" appeal that lacks the "sacrosanct" quality of a criminal defendant's right to pursue a direct appeal from a judgment of conviction. Ante at . While the Superior Court does perform a review of an administrative body's determination under G. L. c. 30A, an appeal from that trial court determination to this court is a direct appeal as of right. And while this court's review is based on the same record that was before the Superior Court, the nature of the review is different. The Superior Court is making a trial court determination of a motion for judgment on the pleadings.[5] An appeal to this court from that determination is not a collateral appeal, and it is not a discretionary appeal. Cf. Pennsylvania v. Finley, 481 U.S. 551,

---

[5] Indeed, in sex offender cases, CPCS appoints attorneys to represent clients in board hearings; those attorneys are charged with representing the client through the G. L. c. 30A review at the Superior Court, which is still a trial court proceeding, and with perfecting an appeal to the Appeals Court. See CPCS, Assigned Counsel Manual § M, at 4.197. For the appeal to the Appeals Court, specialized appellate attorneys are appointed. See id.

555 (1987); <u>Commonwealth</u> v. <u>Conceicao</u>, 388 Mass. 255, 258
(1983); <u>Commonwealth</u> v. <u>Coral</u>, 72 Mass. App. Ct. 222, 224-225
(2008), cert. denied, 556 U.S. 1137 (2009). It is an appeal as
of right with the right to counsel provided. In my view, any
such appeal should be considered "sacrosanct."[6]

---

[6] To suggest, as the majority does, that the prejudice of
Doe's lost appeal can be measured or remedied simply by
reviewing the briefing on the motion for judgment on the
pleadings in the Superior Court devalues appellate advocacy and
renders the entire appellate process superfluous. In sex
offender classification cases in particular, there is a history
of appellate advocacy resulting in significant gains for
offenders whose cases would otherwise have been dismissed. See
<u>Doe, Sex Offender Registry Bd. No. 7546</u> v. <u>Sex Offender Registry
Bd.</u>, 487 Mass. 568, 580 (2021) (finding Superior Court's denial
of offender's motion to vacate final classification was abuse of
discretion where premature classification violated offender's
due process rights); <u>Doe, Sex Offender Registry Bd. No. 380316</u>
v. <u>Sex Offender Registry Bd.</u>, 473 Mass. 297, 315-316 (2015) (<u>Doe
No. 380316</u>) (vacating Superior Court decision affirming
offender's level two classification where due process required
classification to be established under higher standard of
proof); <u>Doe, Sex Offender Registry Bd. No. 8725</u> v. <u>Sex Offender
Registry Bd.</u>, 450 Mass. 780, 784-785 (2008) (vacating Superior
Court decision affirming offender's level one classification
where "board's determination that [offender] had a mandatory
obligation to register annually, solely by virtue of his prior
conviction," violated offender's due process rights). See also
<u>MacWhorter</u> v. <u>Derwinski</u>, 2 Vet. App. 133, 135 (1992) ("The
purposes of filing a brief in a judicial appeal are to state the
position of the party from the point of view of an advocate --
advocacy being a prime ingredient of the appeal . . ."). Cf.
<u>Eskridge</u> v. <u>Washington State Bd. of Prison Terms & Paroles</u>, 357
U.S. 214, 216 (1958) (holding that "[t]he conclusion of the
trial judge that there was no reversible error in the trial
cannot be an adequate substitute for the right to full appellate
review available to all defendants . . . who can afford the
expense of a transcript"); <u>Hughes</u> v. <u>Booker</u>, 220 F.3d 346, 353
(5th Cir. 2000) (where defendant is "denied the effective
assistance of an appellate advocate," appellate court's
"independent review of the record cannot remedy this denial").

The majority concludes that filing for reclassification will be sufficient to restore Doe's appellate rights, citing assurances from the board referenced in a previous decision of this court, which states in full that "we are informed by [the board] that the bar for showing changed circumstances is 'very low' and that the mere passage of time generally qualifies." Doe, Sex Offender Registry Bd. No. 6969 v. Sex Offender Registry Bd., 99 Mass. App. Ct. 533, 541 n.7 (2021). Unfortunately, these assurances are not codified in the board's regulations, which are, nevertheless, clear that "a decision in a reclassification hearing, in contrast with the original classification, is not written on a clean slate." Doe, Sex Offender Registry Bd. No. 326573 v. Sex Offender Registry Bd., 477 Mass. 361, 367 (2017). See 803 Code Mass. Regs. § 1.31(5)(e) (2016) (in deciding motion for reclassification, board is not foreclosed from "considering the information relied on by the Board to determine the sex offender's prior classification levels, including any prior written decisions issued by the Board"); Noe, Sex Offender Registry Bd. No. 5340 v. Sex Offender Registry Bd., 480 Mass. 195, 203 (2018) ("We recognize that an offender who has previously been registered is not in the same position as someone who has never offended or

never been registered").[7] Requiring Doe to seek "reclassification" is not an adequate remedy for the loss of appeal as the initial classification would necessarily have an impact on any subsequent petition for reclassification.[8]

Because Doe's motion to vacate and supporting materials established that he lost his right of appeal due to ineffective assistance of counsel, the board abused its discretion in denying the motion. At a minimum, it should have held an evidentiary hearing to assess any questions of credibility. If, after the hearing, the board were to find that Doe was, in fact,

---

[7] There are additional limitations to the reclassification approach, including instances where petitioners are ineligible to apply due to specific circumstances outlined in the regulations. See 803 Code Mass. Regs. § 1.31(2)(e) (2016) (board may summarily deny motion for reclassification if offender is incarcerated, has pending criminal charges, or has not remained offense-free for more than three continuous years since last classification). While these circumstances may not be applicable to this case, the broader implications of the majority's position underscore the need for an approach that accounts for situations where an offender's ability to file for reclassification might be restricted.

[8] In Doe No. 380316, 473 Mass. at 314, the Supreme Judicial Court required the board to reconsider all pending classifications and appeals in view of its holding that due process required risk classification to be established by clear and convincing evidence. Where an offender can file a request for reclassification three years from the date of an original classification, which in many cases, is well before an appeal from an original classification decision is fully litigated, the Supreme Judicial Court's decision to order the board to reconsider all of its pending classification decisions and appeals, rather than suggest eligible offenders simply apply for reclassification, speaks volumes. See 803 Code Mass. Regs. § 1.31.

deprived of an appellate proceeding due to the incompetency of counsel, given the passage of time and the purpose of a classification hearing, to assess a sex offender's present risk, Doe's rights can be fully restored only by vacating his original classification and granting him a de novo hearing.[9]  See Doe, Sex Offender Registry Bd. No. 7083 v. Sex Offender Registry Bd., 472 Mass. 475, 483 (2015) ("the registration statute requires [the board] to base its classification determinations on a sex offender's 'current' risk to the community, in order to protect the offender's right to due process").

Contrary to the majority's assessment, Doe has not asked us to adopt a rule that sex offenders who "for whatever reason have not pursued a further appeal . . . automatically get to reopen

---

[9] Although the majority places a strong emphasis on the importance of the public's interest in finality, "the interest in finality is considerably less weighty in a sexual risk classification proceeding than in a criminal case." Doe No. 209081, 478 Mass. at 464 (Gants, C.J., dissenting).  As a practical matter, "the concerns that in the past have typically weighed in favor of finality -- the deterioration of evidence, the need to resummon witnesses, the cost and time associated with readjudication . . . are present in a criminal case but largely absent in the context of a classification hearing." Id. at 464-465; indeed, Doe's classification hearing involved only documentary evidence.  Moreover, a rigid commitment to finality in this context could lead to classifications that are out of touch with new information, research, and evolving societal norms.  Therefore, unlike other legal contexts where finality is paramount to provide stability and reliability, an unwavering commitment to finality in sex offender classification proceedings could actually hinder the public's ability to make well-informed decisions based on up-to-date classifications.

the classification proceedings without any showing of prejudice." Ante at    .  Rather, Doe asks us to apply long-standing precedent holding that presumptive prejudice arises where counsel's incompetency forfeits a proceeding his client had a right and a desire to pursue.  Because I believe the court's decision today affords sex offenders "something less than what we usually refer to as the effective assistance of counsel," Poe, 456 Mass. at 813, I respectfully dissent.